In the Matter of the Application of SIMON LEVENTALL, Appellant, on Behalf of Himself and on Behalf of All the Other Stockholders of SOCONY-VACUUM CORPORATION, Similarly Situated, Who May Choose to Come in and Make Themselves Parties to This Proceeding, to Appraise the Value of Shares of Stock of SOCONY-VACUUM CORPORATION, Respondent.

First Department, May 4, 1934.

*Aaron G. Mintz,* for the appellant.

*John Kadel* of counsel [*Kadel, Van Kirk & Trencher,* attorneys], for the respondent.

MARTIN, J.   Simon Leventall, the owner of about 200 of the 30,898,843 shares of stock issued and outstanding of Socony-

Vacuum Corporation, sought to have the court appoint " three appraisers," under section 21 of the Stock Corporation Law, to appraise the value of his stock in that corporation. The right to an appraisal is placed on the ground that he had voted against and objected to a proposition submitted by the respondent to its stockholders. The proposition involved its Far East properties. Because of such transfer the appellant, as a non-consenting stockholder, says he is entitled to an appraisal of his stock.

Notice of a special meeting of stockholders of the respondent, dated November 6, 1933, together with a letter bearing the same date, were mailed to all the stockholders. The notice and letter are set forth in the record. The purpose of the special meeting was to obtain the approval of the stockholders to the transfer and conveyance of the Far East properties of the respondent to a newly-organized corporation to be known as the Standard-Vacuum Oil Company, pursuant to an agreement entered into on August 30, 1933, and which provided *that in exchange for its properties the respondent would receive one-half of the stock of the new company*, which would then continue the business in the Far East.

In its notice to the stockholders it concisely stated the purpose of the meeting and the necessity for such a course. The notice in part stated: " Socony-Vacuum either directly or through locally organized subsidiary or affiliated companies owns storage and distributing facilities, and maintains a marketing organization in every important market of the Far East. It owns no producing properties and no refining facilities in this area. On the other hand Jersey, which has neither distributing facilities nor marketing organizations in this area, through a locally organized subsidiary owns large proven crude oil reserves and modern refining facilities. The business of the two companies in this territory is truly complementary — what one lacks is possessed by the other — making the union of the two a normal and logical business step growing out of the particular needs of the two companies.

" During the early years of its operations in the Far East, Socony-Vacuum had but little competition. With the increase in demand for petroleum products other companies entered those markets and competition became keen. At the present time this competition is intensive, particularly on the part of competitors who have crude supplies and refining facilities advantageously located. With the passage of years it has become increasingly evident that nearby sources of crude and local refining facilities are not only desirable but necessary in order to enable our company to preserve and protect its business and to maintain its marketing position in that part of the world."

The resolution to make the transfer was duly carried at the meeting which was held on December 14, 1933. Fifty-three thousand four hundred and fifty stockholders representing 23,827,554 shares of stock voted in favor thereof and twelve only, representing 3,546 shares, voted in opposition thereto.

The respondent was not personally present at that meeting. On December 6, 1933, he had executed a proxy to one Aaron G. Mintz, an attorney, who attended the special meeting and in behalf of the petitioner objected to the proposed transfer by the respondent of its Far East properties, voted against it and then demanded payment for petitioner's shares.

Within twenty days after the meeting, and on December 15, 1933, a registered letter was sent to the respondent by Mintz, on behalf of the petitioner, protesting against the transfer and demanding payment for the 200 shares of stock which he represented.

On December 29, 1933, the petitioner served the eight days' notice of motion required by section 21 of the Stock Corporation Law, with a copy of his petition, personally signed by the petitioner, praying for the appointment of appraisers to determine the value of the appellant's stock. The respondent contends that the application is not made in good faith and that in any event appellant is not entitled to the relief demanded.

The Special Term first granted the petitioner's motion, but on a reargument and further consideration thereof, it vacated and set aside its previous order and denied the motion. The petitioner now appeals from the latter order.

Sections 20 and 21 of the Stock Corporation Law, upon which the petitioner relies for the appointment of appraisers, are as follows:

" § 20. Voluntary sale of franchise and property. A stock corporation, except a railroad corporation and except as otherwise provided by law, with the consent of the holders of record of two-thirds of its outstanding shares entitled to vote thereon may sell and convey its property, rights, privileges and franchises, or any interest therein or any part thereof; but franchises within the state may be sold only to a domestic corporation. Before such sale or conveyance shall be made such consent shall be obtained at a meeting of the stockholders called pursuant to section forty-five.

" § 21. Rights of non-consenting stockholders or the corporation on voluntary sale of franchise and property. If any stockholder not voting in favor of such proposed sale or conveyance shall at such meeting, or within twenty days thereafter, object to such sale, and demand payment for his shares, such stockholder or the corporation may, within sixty days after such meeting, apply to

the supreme court at any special term thereof held in the district in which the office of such corporation is situated, upon eight days' notice, for the appointment of three persons to appraise the value of such stock, and the court shall appoint three such appraisers, and designate the time and place of their first meeting, with such directions in regard to their proceedings as shall be deemed proper, and also direct the manner in which payment for such stock shall be made to such stockholder."

In answer to the appellant's petition the respondent alleged that it was formerly known as the Standard Oil Company of New York, having changed its name on July 30, 1931; that it filed its certificate of incorporation with the Secretary of State of the State of New York on August 10, 1882, and that thereafter and on or about March 23, 1898, and again on or about September 19, 1923, it amended its certificate of incorporation with respect to its corporate powers. Annexed to the answer as Exhibits " A," " B " and " C " are the certificate of incorporation and the certificates containing the amendments thereto setting forth its rights and powers. Since its incorporation it has been continuously engaged, directly or through subsidiary corporations, in the refining and marketing of petroleum products and kindred lines of business and is now so engaged in the United States and in various countries throughout the world.

It is then set forth that in extending and promoting the company's business it had acquired other interests in marketing outlets and in producing and refining companies and facilities; that it had theretofore acquired such an interest in two companies known as Magnolia Petroleum Company and General Petroleum Corporation as well as in other producing and refining properties; that under the plan adopted by the stockholders of the respondent, but opposed by the appellant, respondent is not destroying or changing the nature of the company's business but is adopting a more modern and effective means of conducting its operations in the Far East.

In its answer the respondent also alleged: "Almost continuously since its incorporation, there have been extensions and arrangements of many kinds made to promote the business of the company, consisting in part of the acquisition of interests in marketing outlets and in part by the acquisition of large interests in producing and refining companies and facilities. The transaction in question is just such an acquisition of an interest in producing and refining properties in the Far East, for the purpose of supplying the company's markets at that point more advantageously and in effect a stock interest was given for such producing and refining properties somewhat similar to the issuance of the Company's stock for the producing and refining

properties of Magnolia Petroleum Company and General Petroleum Corporation, both of which were transactions of very large size. In addition, there have also been from time to time numerous lesser acquisitions by Socony-Vacuum Corporation of producing and refining properties. There has been and will be no abandonment of business or lessening of market activities in the Far East or elsewhere through the organization of Standard-Vacuum Oil Company, or the operation through it of certain of the branches of Socony-Vacuum Corporation. The adoption of the plan to make more modern and effective its operations in the Far East territory is a necessary process of change, true of substantially all other large petroleum companies which have continuously expanded by acquiring facilities through the issue of their own stock or the stock of subsidiaries. Explicit instances of such acquisitions of both types can be given and in numerous cases. The transaction in question was one which was a necessary and reasonable step in the judicious conduct of the regular business of Socony-Vacuum Corporation. It has not destroyed or changed the nature of the business of the company. A person who holds stock in a large oil company over any considerable period of time must expect such business changes which are necessary to meet the changing phases of the business, the alternative being destruction of the business and the stockholder's investment."

The respondent contends that the arrangement with the Standard Oil Company of New Jersey, whereby each corporation transferred to a new operating corporation known as Standard Vacuum Oil Company certain of their properties in the Far East, was made pursuant to the powers conferred upon it by its charter and in accordance with the general character of its business. The primary purpose of the arrangement was to modernize obsolete conditions and to retain and bring the Far East business up to present-day methods. No integral or important part of the business has been disposed of, but, on the contrary, the value of its Far East assets has been enhanced by providing a more economical and modern marketing method and thus strengthen its position in that territory.

The petitioner claims that the transfer of the Far East assets of the respondent, having an admitted value of over $90,000,000 and amounting to about one-eleventh of the value of all the assets of the corporation, is such a sale or transfer as entitles him to the relief sought under the Stock Corporation Law. The respondent says that the rearrangement of its assets does not deprive the stockholders of any of the property for the corporation now owns half the stock of the newly-organized company which is to continue the Far East business.

The application of the petitioner was first granted by the court upon the theory that *Matter of Timmis* (200 N. Y. 177) permitted the petitioner to invoke the provisions of the statute and request an appraisal. When the matter was further examined upon the reargument, the court properly held that the *Timmis* case was not controlling, and that the transfer of properties and rights and the combination of interests as set forth was an expansion of the corporation's business to promote facilities of production and distribution and that the transfer was not a partial self-destruction or dissolution of the corporation. The court at Special Term in a concise opinion said: "Its charter apparently authorizes a transaction such as this. The directors are vested with the power to complete it. The character of the corporate business does not seem to have been substantially changed. The assets transferred are not (of themselves) vitally essential to the ordinary transaction of business. Indeed it would appear that the adoption of the agreement is advantageous to the business.

"In addition it seems doubtful that this dissenting stockholder has duly made the demand required by the statute. The subsequent demand by the proxy who represented him at the meeting is not strictly a compliance."

The certificate of incorporation and the amendments thereto gave the respondent powers sufficiently broad, if necessary, to cover the transaction in question. It is well established that the directors of a corporation have the power to do whatever is permitted by its certificate of incorporation or charter in the ordinary course of its business. (General Corp. Law, § 27; *Manson* v. *Curtis*, 223 N. Y. 313, 322; *Continental Securities Co.* v. *Belmont*, 206 id. 7.)

A somewhat similar situation was under consideration in the case of *Wattley* v. *National Drug Stores Corp.* (122 Misc. 533; affd., 208 App. Div. 836). The court there held that the sale by the directors of a drug store corporation of one of its stores was in the ordinary course of business and not prohibited by the Stock Corporation Law of the State of Delaware, which law is similar to the Stock Corporation Law of this State. The record in that case discloses that the National Drug Stores Corporation, the defendant, owned fifteen drug stores, and the sale objected to was the sale by the corporation of one of these stores located in the Knickerbocker Building at Forty-second street and Broadway, New York city. It was contended in that case by the plaintiffs that the particular drug store was the most desirable one that the company had and the sale of it would badly damage the business of the defendant. The court said that the sale " is but an incident of the general transaction of business, discretionary powers to which vest in the govern-

ing board of the corporation, the exercise of which by the directors is beyond power of complaint in instances as appear in this action. Indeed, a holding otherwise would compel a corporation of this character to conduct and maintain through its corporate life a store running at a partial loss, to the injury, and perhaps, financial destruction of the company, dependent on its size and the financial returns of its multiple parts."

In *Matter of Knaisch* (203 App. Div. 725) a similar proposition was considered, and it was held that a corporation could, without the consent of its stockholders, lease its entire plant for the purpose of having it operated by another corporation.

The transfer contemplated herein is not of the nature or character referred to in the Stock Corporation Law. In fact, the arrangement here made, in addition to being beneficial to the corporation and its stockholders, cannot be placed in the class of transfers of property and good will, which decreases the property and affects its value.

This stockholder became a stockholder of record on November 15, 1933, after the notice was sent to the holders of stock. It is argued that the petitioner has an ulterior purpose in his effort to invoke the statute. An application of this kind must be shown to be made in good faith and not for the purpose of injuring a large majority of stockholders, by thus preventing the carrying out of a proposition, the advisability of which seems to be beyond question.

The statute in any event contemplated an objection by a *bona fide* stockholder and not by one who purchases stock for the purposes of harassing and annoying the other stockholders. It was never contemplated that a person purchasing 200 shares of stock out of more than 30,000,000 shares, should be permitted to come in after a notice for a transfer of a part of the property or an arrangement by which a transfer is about to be made to better serve the corporation, and apply for the appointment of appraisers in an attempt to prevent such transfer or arrangement, and thwart the will of holders of practically all the outstanding shares of a company whose fixed capital assets, according to its financial statement of December 31, 1932, were over $1,000,000,000.

We are of the opinion that the good faith of such applications should be shown before the courts tolerate any attempt to interfere with a corporation, where the officers or directors are clearly acting in the best interests of its stockholders. If the petitioners show merit in such applications and they are within the statute they should be granted.

Under the circumstances here disclosed, the transfer is not of such a character as to warrant the application of the statute. The

transfer here contemplated is not of an integral part of its business and in no way injuriously affects the corporation, nor can it be considered a practical dissolution thereof.

The order should be affirmed, with twenty dollars' costs and disbursements.

FINCH, P. J., TOWNLEY and GLENNON, JJ., concur.

Order affirmed, with twenty dollars costs and disbursements.