### CENTRAL-PENN NAT. BANK OF PHILADELPHIA v. PORTNER.

#### No. 10802.

United States Court of Appeals
Third Circuit.

Argued Dec. 16, 1952.

Decided Feb. 9, 1953.

608

Thomas Raeburn White and Joseph W. Henderson, Philadelphia, Pa. (W. Wilson White, Ira Jewell Williams, Jr. and Ira Jewell Williams, on the brief), for appellant.

Harry Norman Ball, Philadelphia, Pa. (Joseph A. Ball and Morris L. Weisberg, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and STALEY, Circuit Judges.

BIGGS, Chief Judge.

The complaint recites the following allegations, which, since the complaint was dismissed as insufficient in law, must be taken to be true.

The plaintiff, Central-Penn National Bank of Philadelphia, a national banking association, on November 29, 1951, entered into a written agreement of consolidation with the City National Bank of Philadelphia under the charter and title of the plaintiff. See 12 U.S.C.A. §§ 33–34a. The execution of the agreement of consolidation was announced in news articles in the Philadelphia newspapers of November 29 and 30, 1951, and was duly advertised. On December 12, 1951, all of the plaintiff's shareholders of record were advised by registered letter that the agreement had been made and were notified that it would be presented to them for ratification at the plaintiff's annual stockholders' meeting to be held on January 15, 1952. The defendant, Portner, purchased three hundred shares of the capital stock of the plaintiff on or about January 4, 1952. Prior to these purchases the defendant had never owned any of the plaintiff's capital stock. Certificates representing the shares purchased by the defendant were not presented to the plaintiff for transfer into the name of the defendant until January 10 and 11, 1952, and the shares were not transferred until January 16, 1952. The defendant purchased the three hundred shares of stock with full knowledge that the consolidation was pending and that the agreement would be submitted to the plaintiff's stockholders for ratification on January 15, 1952. On January 14, 1952, the defendant gave notice of his dissent from the consolidation and his intention to have the three hundred shares owned by him appraised and the value thereof paid to him.

The thirteenth paragraph of the complaint alleges that the "Defendant purchased * * * [the] shares of plaintiff's capital stock for the sole purpose of dissenting from the proposed consolidation * * * in order to receive as the appraised value of the stock a sum substantially in excess of its market value and in excess of the price paid by him."

The suit at bar is based on the Declaratory Judgments Act as embodied in 28 U.S.C. §§ 2201–2202. The plaintiff charges that defendant is not included within those provisions of Section 1 of the Act of November 7, 1918, as amended, 12 U.S.C.A. § 33, which state that "any shareholder of any of the associations so consolidated, who has voted against such consolidation at the meeting of the association of which he is a shareholder or has given notice in writing at or prior to such meeting to the presiding officer that he dissents from the plan of consolidation, shall be entitled to receive the value of the shares so held by him * * *, such value to be ascertained * * * by an ap-

praisal * * *." The court below held that it had jurisdiction of the cause of action and that the phrase "any shareholder" was broad enough to include the defendant. We agree that the court below had jurisdiction of the controversy, but we cannot concur in the result reached.

■ The provisions of the merger and consolidation statute were intended by Congress to protect national banking associations and their shareholders. If there is any doubt upon this subject it will be set at rest by an examination of the legislative history of the statute. H.R.Report No. 408, March 15, 1918, 65th Cong., 2nd Sess., states that "Proper provision is made by the proposed law to protect any dissenting stockholder in either corporations,[1] who does not desire to be connected with the consolidated bank." We emphasize the words "protect" and "dissenting". Senate Report No. 406, April 24, 1918, 65th Cong., 2nd Sess., says in pertinent part: "This bill permits two or more national bank associations * * * to consolidate * * *, and provides a means of paying in full any dissatisfied stockholder by arbitration." We note the use of the adjective "dissatisfied".

■ The verb "dissent", according to Webster's New International Dictionary, 2d Ed., means "To differ in opinion; to be of contrary sentiment; to disagree * * *". If, therefore, Portner was a bona fide dissenter, he differed from the majority of the shareholders of the plaintiff, was of a sentiment contrary to theirs, and disagreed with the consolidation. But if the allegations of the complaint be true this was not the fact. Portner was in favor of the consolidation. If it was not consummated, his speculation, if such stock transactions as his may rise to that dignity, became worthless. He asserted that he was opposed to the consolidation when such was not the case.[2] His dissent was a mere pretense, and such pretense does not entitle the shareholder to the benefit of the statute. The interpretation which Portner would have us accept is in disregard of the clear congressional purpose. Cf. Guessefeldt v. McGrath, 342 U.S. 308, 72 S.Ct. 338.[3]

As to the protection of national banks and their stockholders, it is obvious that if any considerable number of stockholders followed the tactics employed by Portner, national banking associations could be wrecked, not aided, by consolidations or mergers prescribed by the statute. In fact, if carried to logical extremes, the tactics employed by Portner could force the liquidation of a national bank.[4]

---

1. It should be observed that the precise situation presented by the case at bar should not arise again because of the provisions of Section 4(b), of the Act of July 14, 1952, P.L. 530, 12 U.S.C.A. § 34b (b) which state that the appraisal provisions of Sections 33, 34 and 34a of the Act of November 7, 1918, as amended, U. S.C.A. Title 12, " * * * shall apply only to shareholders of and stock owned by them in a bank or association being merged into the receiving association." The receiving bank in the instant case is the plaintiff, Central-Penn National Bank of Philadelphia.

2. While a dissenter cannot expect to receive the full book value of his stock, the award to him, as here, will generally exceed the market value which he has paid when that market value is substantially less than book. The adjusted book value of the plaintiff's stock was disclosed by it, when the consolidation was announced, as $51.64 a share. Its market value during the period when Portner bought his stock ranged from a low of 36 to a high of 39½. Both this court and the court below may take judicial notice of these duly published prices. Cf. Park Tilford v. Schulte, 2 Cir., 160 F.2d 984, 990, certiorari denied 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347.

3. See also Church of the Holy Trinity v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226; United States v. American Trucking Association, 310 U.S. 534, 542, 60 S.Ct. 1059, 84 L.Ed. 1345; Fleischmann v. United States, 270 U.S. 349, 360, 46 S.Ct. 284, 70 L.Ed. 624, and the decision of this court in Tonopah Mining Co. v. Commissioner, 127 F.2d 239.

4. The disparity between market value and appraisal value of the shares bought by the defendant is important in another respect. Section 1 of the Act of November 7, 1918, *supra*, requires that shares surrendered to a consolidating bank for their appraisal value "shall be * * * sold at public auction within thirty days

610

The judgment of the court below is reversed and the cause is remanded with the direction to reinstate the complaint and to proceed in accordance with this opinion.

STALEY, Circuit Judge (concurring).

I agree with the conclusion arrived at by the majority, but I would follow a different path to get there. I think that the majority has opened a Pandora's box when it permits inquiry into motives or hidden sentiments by corporate officials or by the courts in order to determine whether one has assented to or dissented from a corporate act. This would impose an intolerable burden of inquiry upon those who conduct corporate elections, and, as a precedent, would open a new door to litigation with regard to corporate affairs. It is an unmistakable invitation to so-called "strike suits."

The statute, when read as a whole, indicates that the appraisal provisions are open only to those who are shareholders at the time the consolidation agreement is promulgated by the directors, for they are the only ones who have a choice thrust upon them. Willy-nilly, they must decide whether to consent to or disapprove of a substantial change in the corporation. Those who acquire shares after the promulgation of the agreement do so in the face of the proposed consolidation. This view is confirmed by the legislative history, quoted by the majority. It also has received judicial recognition in cases construing statutes substantially identical to that under consideration here. Application of Stern, Sup.Ct.1948, 82 N.Y.S.2d 78. See also In re Leventall, 1934, 241 App.Div. 277, 271 N.Y.S. 493, 1st Dept. This test avoids the necessity of determining whether there has been a real, or only a pretended, dissent. As said in the Stern case, supra, 82 N.Y.S.2d at page 82, it is a "test which is objective and consonant with commercial transactions."

after the final appraisement * * *." Any resulting loss must of course be borne by the bank's other shareholders. Such loss could be very substantial where

the number of dissenters were large. We think that the other shareholders may not be compelled to bear this burden when imposed by a sham dissent.