M. Henry Martuscello, J.
This is an application by two owners of approximately one fourth of the outstanding stock of the respondent, Eberhard Faber Pencil Company, Inc., for an appraisal and recovery of the value of their stock pursuant to sections 20 and 21 of the Stock Corporation Law. Section 20 permits a corporation to sell its property, rights, privileges or franchises, or any interest therein, or any part thereof, upon the consent of the holders of two thirds of its outstanding shares; and section 21 provides for the appraisal of the value of the shares of the dissenting stockholders who do not elect to participate in a sale thus authorized and for the payment to them of the appraised value of their holdings.
Petitioners base their right to the relief sought herein upon a resolution, passed over their objections at a special meeting of stockholders, whereby respondent corporation was authorized to sell its land and factory buildings located in Brooklyn and to transfer its manufacturing operations to Wilkes-Barre, Pennsylvania.
The answering affidavits explain the purport of this resolution and set forth the reasons for the adoption thereof. It is shown therein that the corporate management, deeming the Brooklyn plant obsolete and the operation thereof unprofitable and against the best interests of the corporation, studied the need and advisability of establishing manufacturing operations *959 in a modern-type factory building to help meet the competition and improved production facilities of respondent’s competitors; and, in pursuit thereof, it advertised in the Wall Street Journal for information from industrial development committees or chambers of commerce regarding suitable plant locations or facilities; that after making a field examination of the most promising sites and proposals that came to its attention, said management found as best suited for the corporation’s needs a proposal by the Greater Wilkes-Barre Industrial Fund, Inc., which provided for the construction of a factory of adequate size and to the specifications of the company and for a long-term lease at a reasonable rent; and it accordingly recommended the sale of the plant here and the relocation of the manufacturing operations in Wilkes-Barre; that thereupon the board of directors adopted a resolution implementing the recommendation thus made; and thereafter, at a special meeting of stockholders, called, not for the purpose of invoking section 20 procedure, but solely as an act of thoughtful and prudent management to keep the stockholders informed and to permit an expression of their views thereon, there was ratified over petitioners’ opposing votes the following' resolution, which had been previously adopted by the board of directors:
‘‘ Resolved, that the recommendation of the Management to relocate the Brooklyn operations in Wilkes-Barre, Pennsylvania, under the general plan presented by it (including the proposal by The Greater Wilkes-Barre Industrial Fund, Inc. to the company dated March 28, 1955) is approved subject to these provisos:
“ (a) Management’s ability to negotiate settlement of separation, retirement and stay-on pay, other labor charges and expenses, and other non-recurring costs of relocation, at an estimated cost approximating $630,000;
“ (b) Management’s ability to secure satisfactory commitment for the sale of the Brooklyn plant for not less than $700,000 net;
“ (c) The commitment of The Greater Wilkes-Barre Industrial Fund, Inc. to erect and to lease to the Company facilities adjacent to the proposed pencil plant for the rubber operations of the Company when it shall decide to move the same, on terms substantially similar to its present proposal.
“ Resolved, that subject to the foregoing, the appropriate officers of the Company be and they hereby are authorized and directed to take any and all action necessary or appropriate to accomplish the sale of the Brooklyn premises, to terminate operations and to relocate such operations in Wilkes-Barre, in *960 accordance with the program so approved (and such non-substantial modifications thereof as the President may deem advisable), to execute and deliver all legal instruments necessary or advisable to carry such action into effect, and to borrow money for the purposes and not exceeding the amounts set forth in the plan proposed.”
Respondent also pointedly alleges therein that petitioners received and accepted its dividends shortly after they notified it of their election to demand an appraisal of, and payment for, their shares.
Petitioners take the position that the adoption of the above-stated resolution commits the respondent to the disposal of its plant here, which is its principal asset, and that such disposal would be a sale and conveyance of corporate property as contemplated by the statutes invoked. Respondent, on the other hand, taking a contrary view thereof and urging the dismissal of the petition, contends (1) that section 20 is inapplicable since its proposed action, if consummated, would be a sale in the regular course of its business and in furtherance of the express objects of its existence; and (2) that petitioners’ acceptance of dividends under the circumstances above shown conflicts with subdivision 6 of section 21 of the Stock Corporation Law, and, by reason thereof, constitutes an election to waive the statutory rights asserted herein by them.
The claim of waiver thus advanced is without merit. Subdivision 6 of section 21 reads as follows: “ 6. Any stockholder demanding payment for his stock shall have no right to receive any dividends or distributions payable to holders of such stock of record after the close of business on the day next preceding the date of the stockholders’ vote in favor of the action to which such objection was made, and upon such vote shall cease to have any other rights of a stockholder of the corporation with respect to such stock, except the right to receive payment for the value thereof as in this section provided; and no such demand may be withdrawn unless the corporation shall consent thereto. If, however, such demand shall have been withdrawn upon such consent, or if no petition for the appointment of an appraiser to determine the value of the stock of such stockholder shall have been made within the time herein provided, or if a court of competent jurisdiction shall determine that such stockholder is not entitled to the relief by this section provided, or if the action to the taking of which objection was made shall be abandoned or rescinded, the status of such stockholder as a stockholder in the corporation thereupon shall be restored, without prejudice, however, to any corporate proceedings which *961 may have been taken during the interim; provided, that such stockholder shall thereupon be entitled to receive any dividends, distributions or other rights to which he would have been or would have become entitled had he not demanded payment for his stock.”
This subdivision, quite obviously, authorizes a corporation to deny dividends to a dissenting stockholder who seeks to compel it to purchase his stock. However, since the power thereby granted is manifestly intended as a corporate benefit, any corporation entitled thereto is not required to exercise such right, but instead may waive it, and accordingly pay out dividends in complete disregard thereof. And, as is apparent therefrom, said subdivision, while divesting a dissenting stockholder of the right to demand dividends, does not impede, by way of impairing existing rights or otherwise, the free acceptance by such a stockholder of dividends voluntarily proffered him; nor does it grant him any choice, as an alternative of his right to compel the purchase of his stock, other than possibly that of withdrawing his demand upon consent of the corporation and thus be restored to the status of a stockholder.
Turning now to the consideration of the dividends in question, I find, for aught that appears in the submitted papers, that petitioners did not make any demand therefor, but that they were freely paid by the respondent. These circumstances, to be sure, indicate that the. corporation elected to waive its right to withhold said dividends; but I fail to perceive any reason justifying the inference that petitioners, by accepting respondent’s benefaction, elected to waive their rights as asserted herein, there being no statutory authority or legal situation presented here whereby it can be said that petitioners, at the time they acted, were confronted with the proposal that acceptance of the dividends would entail the loss of their privileges as dissenting stockholders.
Moreover, said claim of waiver, if valid, would necessitate the making of a common rule that acceptance of dividends by a dissenting stockholder, alone and of itself, constitutes a waiver of his right to compel the purchase of his stock. A waiver without a restoration of the rights of a stockholder would be pointless. Hence, with the aforesaid rule controlling, it would follow, as a corollary thereof, that acceptance of dividends, ipso facto, restores a dissenting stockholder to the status of a regular stockholder. But such status is not thus attainable, for subdivision 6 prescribes that same cannot be effected except by the withdrawing of the demand for purchase, upon the corporation’s consent, or upon the happening of any of the *962 contingencies specified therein, none of which is present here. Nor can recognition of respondent’s position herein as a tacit consent to the restoration of such status be conciliatory of the statutory prescription, in the absence of another requisite thereof, namely, the withdrawal of the aforesaid demand, whereon petitioners refuse to yield. Additionally, it appears that the rule sought would not be abiding in a converse situation, where a dissenting stockholder might thus seek a restoration of his rights, and a corporation, for its own interests, might withhold its consent thereto, as would be its right; and there would be as a consequence thereof an anomalous ruling.
As said claim in effect would permit of a rule tending to override the provisions of subdivision 6, which is relied upon as authority therefor, and to be otherwise not generally applicable, it thereby reveals its own inherent defects and is unavailing.
Respondent’s remaining contention, however, is sustained by the facts as presented in the papers.
In Matter of Timmis (200 N. Y. 177) the history and purpose of sections 20 and 21 of the Stock Corporation Law (then §§ 16, 17) are discussed. Therein it is made clear that the sale and conveyance of property envisioned by section 20 is the equivalent of a corporate surrender, in whole or in part, of corporate functions or a disposition of assets which are essential to complete corporate functioning. In that instance a lithographing and printing corporation involved had taken steps to dispose of and discontinue an important branch of the business activity for which it was incorporated, namely, its calendar department. As pointed out in the decision (p. 182): ‘‘ The sale before us was not made in the ordinary course of the business of the corporation, for it was not organized to sell calendar departments, or any department that would involve going out of business pro tanto. It was not a sale of calendars over the counter or on the road, but of the ‘ business assets and property, ’ including the good will, of an independent and important branch of its business, and the large price agreed upon indicates the actual value of what was sold. The parent company lacked capital to carry on the department, and, as the learned counsel for the appellant states, ‘ the sale was a business necessity, ’ which implies that it was not in the ordinary course. By the sale of the good will the corporation would be prevented from ever engaging in that kind of business again, and while not in form a sale of its franchise to that extent, it would be in effect, because it could no longer exercise its franchise to make and sell calendars. One of the powers conferred by the charter would thus be parted with, and the right to carry on a *963 line of business authorized by the law of its being would be permanently gone. It could not do a kind of business duly authorized by its charter as it had before.” In Matter of Miglietta (2660 Broadway Cory.) (287 N. Y. 246, 254) the court succintly stated the test to be “ whether the sale is in the regular course of the business of the corporation and in furtherance of the express objects of its existence, or something outside of the normal and regular course of the business.” Here, the proposed plant relocation and possible sale of obsolete buildings do not call for any discontinuance of, or diminution in, respondent’s business, or for a surrender of any of its franchise powers. On the contrary, the action contemplated indicates, as previously stated, planning on the part of the corporation for the improvement and expansion of its business activity; and moreover the carrying out thereof would well be within respondent’s charter powers, which authorize it to buy, hold and dispose of real property; and any transaction resulting therefrom would be regarded as being in the regular course of its business. Thus it is shown that section 20 is inapplicable. (Matter of Leventall, 241 App. Div. 277; Wattley v. National Drug Stores Corp., 122 Misc. 533, affd. 208 App. Div. 836; Matter of Knaisch, 195 N. Y. S. 323; cf. Matter of Hake [Hake Mfg. Co.], 285 App. Div. 316.) Epstein v. Gosseen (235 App. Div. 33) presented a situation analogous to that shown here; and the court there made a statement with respect thereto, adaptable for use here, as follows (pp. 36-37): “ The consent of the stockholders under section 20 is not required for the ordinary sale by a corporation in the regular course of business. This contract proposed to be entered into by the Freeport Shores, Inc., and the defendants was not inclusive of good will, franchises to do business, or any basic department of the company’s business, without which it could not function; in fact, it indicated a continuation of its business in the sale of lots, transferring its sales activities from the shore lots at Freeport to the Shore road lots in Brooklyn, which it was about to acquire. ’’ Application denied and petitions dismissed. Submit order.