Morris Eder, J.
Dynamics Corporation of America (herein called “ Dynamics ”) has brought a proceeding (1) to determine which, if any, of the respondents are entitled to have the value of their shares of Reoves-Ely Laboratories, Inc. (herein called “Reeves”) appraised pursuant to section 21 of the Stock Corporation Law, and (2) to appraise the value of the shares held by those deemed so entitled.
Two other proceedings were instituted the same day by two sets of minority stockholders of Reeves who dissented to the merger of Reeves with Dynamics. They request an appraisal and payment of the value of their shares. All parties agree that the three proceedings should be consolidated. Since all dissenting stockholders are named in Dynamics’ proceeding and since the statute (Stock Corporation Law, § 21, subd. 3) contemplates a consolidation of stockholders’ petitions into that filed by the corporation, the proceedings are ordered consolidated into that instituted by the corporation.
Respondents are the holders of record of 29,760 shares of Reeves stock. Dynamics states that 17,600 of such shares having been acquired of record after the proposed merger had been fully publicized, their owners are not entitled to an appraisal, a remedy reserved only for those who have acquired their shares in good faith.
The intent of the statute is clear: while authorizing two thirds of the stockholders of a corporation to consummate a merger, to protect the minority by requiring the corporation to pay them the fair value of their stock (provided they serve notice of their objection to the merger prior to the special meeting called to act on the proposal). By this means they can refuse to go along with the radical change made by the controlling interests in the nature of their original investment and demand payment of the value of their stock. At the same time the majority’s desires are not thwarted.
The governing sections (Stock Corporation Law, §§ 21, 87) do not qualify or limit, in any way the stockholders who may invoke the appraisal proceeding, but the courts have applied the test of good faith. In Matter of Leventall (241 App. Div. 277, 283) it was said that, “ the statute in any event contemplated an objection by a bona fide stockholder and not by one who purchases stock for the purpose of harassing and annoying the other stockholders.” And in Matter of Stern (82 N. Y. S. 2d *52 78, 82) it was held that one who acquired stock “ after a plan for merger has been adopted by the directors and fully publicized ” was not a bona fide stockholder. The reason there stated for denying this remedy to such a stockholder was aptly put by Justice McNally: “ Shares of stock acquired prior to promulgation of a plan * * * are in the hands of stockholders who are met with the necessity of deciding whether it is in their interest to consent to or disapprove a substantial change in the nature of the business of the corporation. Shares of stock transferred after promulgation of the plan have been acquired in spite of the plan.”
As to such owners, it may well be said that they made their choice after the event with their eyes open and should be held to their bargain. An appraisal proceeding at their hands would only be a means of harassing the corporation and, perhaps, inducing it to make a substantial settlement to avoid the adverse publicity of litigation.
In this matter the plan for merger was adopted by the boards of directors of Dynamics and Beeves on December 13, 1955, and special meetings of their stockholders called to vote on the plan. On December 16 notices of these special meetings were mailed to the respective stockholders with explanatory letters setting forth the terms of the merger. On December 20 a detailed statement regarding the merger, including its terms, was given over the Dow Jones ticker and later in the newspapers. The cut-off date, after which stock must be presumed to have been purchased with knowledge of the plan is, therefore, December 20, 1955.
Dynamics argues for the following earlier dates of alleged “ publicizing ” as the dates after which purchasers should be precluded from asking for payment of the actual value of the stock bought, regardless of the merits, or lack thereof, of their complaint that the terms when later announced were not in accordance with proper values. (It may be observed that, in discussing this question of preclusion, I do not pass upon the merits here. The facts have not even been presented yet.)
(1) November 2, 1955 — when the corporate officers are alleged to have discussed the merger with brokerage and banking firms and “ information ” became “ widespread ”. This is akin to rumors or tips, which are ever present in Wall Street. It furnishes neither objective standard nor reliable guide for holding that one who buys after its alleged dissemination should be presumed to have known the facts. Finally, and most significantly, these discussions were still in the formative stage with no concrete plan in existence, knowledge of which alone would bar a buyer from asking for an appraisal.
*53 (2) November 25, 1955 — when Beeves’ management mailed to its preference stockholders a call for redemption or conversion of their stock into common stock, together with a statement that this was preliminary to a proposed merger with Dynamics (which, by then, already had a controlling 60% stock interest in Beeves). The merger, it was stated, would involve exchange of Beeves’ common stock (other than that owned by Dynamics) into a new preference stock of Dynamics which would in turn be convertible into Dynamics’ common stock. The exact provisions, it was said, of the terms of the consolidation would be announced when it was submitted for the stockholders’ approval. The ratio of conversion was not mentioned. This, of course, was the vital bit of information, without which purchasers would still be in the dark as to whether Beeves’ stock was being under, over, or fairly valued. The terms, of course, were not determined officially and the ratio established until the directors voted on December 13 and not made known until December 20.
Even assuming that word of the November 25 announcement was passed around and that some of the respondents bought Beeves stock over-the-counter as a result thereof, I still would deem them “ bona fide ” stockholders for appraisal purposes. Stocks are bought every day on hopes, rumors or even news of mergers. Knowing only the fact that there will be a merger is not the equivalent of knowing in advance the terms of a bargain to which it is only fair that one should be held. When the announcement is made in piecemeal fashion, I can see no reason for depriving subsequent buyers from the relief granted by law of getting the fair value of their purchase unless, of course, they acquired the stock after the terms were given. Any other rule would work a hardship upon those who might be induced thereby to buy and be later justifiably disappointed when the ratio was announced, and open the door to unfair procedures by those in control of corporations and with inside knowledge of their transactions.
The only safe principle to follow in establishing the requisite public notice is that stated in the Stern case, viz., adoption of the plan by the directors and its subsequent publicizing. There, the plan of conversion was announced on January 15,1948 as based on the comparative figures of the corporations as of December 31,1947, with accountants named to compute accordingly. That is a sufficiently definite statement for an alert buyer. Here, until December 13 there was no plan, only a mere suggestion. On that day it became “ the plan” — definite and fixed — as the result of its adoption by vote of the directors. Acquisition of *54 the stock after that plan was widely publicized precludes the statutory remedy.
Before leaving this question of good faith, it should be noted that some of the respondents were owners of Beeves stock prior to any rumors and thereafter added to their holdings.
As to those of the respondents who received stock certificates dated after December 20,1955, the claim is made and supported by affidavits that they actually purchased stock through their brokers long prior thereto. In Matter of Standard Coated Products Corp. (Bazar) (183 Misc. 736, affd. 271 App. Div. 1007) the record date was held not controlling but rather the date of actual purchase. A buyer is not bound by the date when a corporation may record his transaction on its books.
However, the court cannot determine on the affidavits alone that all of said transactions recorded after December 20 represent acquisitions of stock prior to said date unless Dynamics is willing to concede (possibly after a brief investigation) that much. Its memorandum urged that it was entitled to a preliminary hearing on the issue of when the 17,600 shares were purchased ‘1 unless all the relevant information is supplied by sworn affidavits ”. According to the court’s calculation, 9,200 of these are recorded on and after December 20, 1955, and a hearing before a referee will be ordered as to them on the narrow issue here presented if Dynamics, despite the affidavits submitted, desires a preliminary finding as to the dates of their actual purchase and so provides in the order to be settled hereon.
Bespondent Tankey is held not entitled to have the value of his shares appraised for failure to comply with the statutory conditions.
Application for appointment of appraiser is accordingly granted. If Dynamics desires a preliminary reference on the limited issue here indicated, provision may also be made for the appointment of a referee to hear and report as to said matter; the hearing on the appraisal, in the meantime, to be held in abeyance pending the confirmation of such report.
Settle order accordingly.
(On motion for rehearing, April 11, 1956.)
Proposed order to show cause submitted by Dynamics Corporation of America for a rehearing is treated as an application for reargument. In its decision the court indicated that the only safe principle to follow was to deny the right to an appraisal to those who purchased stock after the acquisition of knowledge or public notice of the terms of a merger subsequent to its effective adoption by the boards of directors of the corporations. The application is accordingly denied.