Sidney A. Fine, J.
Two proceedings involving the rights of various stockholders of Flagg-TJtica Corporation, hereinafter referred to as the “ corporation ”, to an appraisal of their stock, pursuant to section 21 of the Stock Corporation Law, came on for hearing before this court on the same day. One of the proceedings, termed the “ Camiel proceeding ”, seeks an appraisal of 5,830 shares of stock held by 11 petitioners. The other proceeding, commenced by the corporation, seeks (1) a determination as to which of the shares held by persons made respondents therein are entitled to an appraisal and (2) an appraisal *478 of the value of the shares as to which it shall be determined a right of appraisal exists. The 11 petitioners in the Garniel proceeding are included among the respondents in the proceeding instituted by the corporation.
By an interim order, dated September 11, 1958, entered upon the consent of all interested parties, the two proceedings were consolidated and an appraiser was designated to assess the value of the shares as to which the court, by a supplemental order to be entered subsequently, should determine that a right of appraisal exists.
It is now incumbent upon the court to decide which shares of stock are to be included in the appraisal and which, for various reasons presently specified, are not entitled to be appraised.
On April 9, 1958, the directors of the corporation voted to recommend to the stockholders that they approve (1) a proposal that they consent to the sale, lease or exchange of all or substantially all of the corporation’s assets, or any part thereof, on such terms and conditions and at such times as the directors should determine, and (2) a proposal that the certificate of incorporation be amended in specified respects, including the elimination of the pre-emptive rights of holders of common stock. On April 15, 1958, pursuant to the provisions of section 45 of the Stock Corporation Law, the corporation mailed to each stockholder of record entitled to vote thereat, and to each stockholder of record who would be entitled to an appraisal if the actions proposed at the meeting were taken, a notice of a special meeting of stockholders to be held on May 8, 1958, for the purpose of voting upon said proposals of the board of directors. On the same day, April 15, the corporation announced to the public the calling of the meeting and the purposes thereof. On May 8, 1958, the directors’ proposals were adopted and approved by the affirmative votes, in person or by proxy, of more than two thirds of the outstanding shares of the corporation entitled to vote thereon, as required by sections 20 and 37 of the Stock Corporation Law.
The corporation concedes that the remedy of appraisal is available under sections 20 and 38 (subd. 11) of said statute to certain of the stockholders. Section 20 confers that remedy upon “ any stockholder entitled to vote thereon and not voting in favor of such proposed sale, lease or exchange ’ ’ who, within times specified in said section, objects in writing to the sale, lease or exchange and demands payment for his stock. Substantially the same provisions are contained in section 38. Sec *479 tion 21 (subd. 8) of the statute provides that any stockholder who shall fail, ‘ ‘ Within twenty days after the last day on which a demand for payment might have heen made ”, to submit his stock certificate or certificates to the corporation for notation thereon of the fact of such demand shall not be entitled to the remedy of appraisal unless the court, ‘ ‘ for good and sufficient cause shown ’ ’, shall otherwise direct.
The corporation concedes that a number of its stockholders who demand an appraisal are entitled to that relief. It objects, however, to the appraisals demanded by other stockholders in cases (1) where stock was acquired after April 15, 1958 (the date of the notice of the stockholders ’ meeting and the date when public announcement of the meeting and of its purpose was made), (2) where stock was voted in favor of the directors’ proposals by the record owners of such stock as of April 14, 1958 (the date fixed by the directors as the record date for the determination of stockholders entitled to vote at the May 8 meeting), and (3) where stock certificates were not presented for notation of the demand for payment within the time fixed in subdivision 8 of section 21. At the court’s suggestion, the corporation has submitted a chart or tabulation listing the shares as to which the, right of appraisal is conceded, and listing the shares as to which appraisal is opposed, together with the grounds upon which the corporation claims there is no right of appraisal. The validity of these objections and their application to the various stockholders will now be considered.
The corporation’s claim, that no stockholder who acquired his stock on or after April 15, 1958 is entitled to an appraisal, is based upon the ground that such a stockholder is presumed to have had knowledge, at the time of his purchase, of the proposals whose adoption forms the basis of his claim for payment of the value of his stock. Admittedly, the statutes conferring the remedy of appraisal contain no language which limits that remedy to those owning stock at the time the proposals to be acted upon at a stockholders’ meeting are made public or known. The corporation urges, however, that the purpose of the enactment of the appraisal statute, as indicated in the opinion of the Court of Appeals in Matter of Timmis (200 N. Y. 177,180-181), was to protect existing stockholders from changes in the corporation’s business which the majority might authorize, not to confer rights upon those acquiring their stock after notice of the supposedly disadvantageous proposals. The opinion of the court in Matter of Lev entail (241 App. Div. 277, 283) contains language which, though dictum, lends support to this view, for it expresses the view that the statute: “ contemplated an objec *480 tion by a bona fide stockholder and not by one who purchases stock for the purpose of harassing and annoying the other stockholders ”. In Matter of Stern (82 N. Y. S. 2d 78) Mr. Justice McNally, now sitting in the Appellate Division, dismissed a petition for appraisal by one who did not acquire his stock until after notices of the stockholders’ meeting called to approve the directors ’ proposals had been sent out and the plan publicized. The court aptly said (p. 82): “ Shares of stock acquired prior to promulgation of a plan * * are in the hands of stockholders who are met with the necessity of deciding whether it is in their interest to consent to or disapprove a substantial change in the nature of the business of the corporation. Shares of stock transferred after promulgation of the plan have been acquired in spite of the plan ”.
Thereafter, in Matter of Dynamics Corp. of America v. Abraham & Co. (4 Misc 2d 50) the Special Term held that persons who had acquired their stock after December 20, 1955, the date on which the detailed terms of the proposals to be voted upon at the stockholders’ meeting were released to the public, were not entitled to an appraisal of their stock. On appeal, the Appellate Division of this department modified the order by making the “cut-off” date December 16, 1955, the date the notices of the stockholders’ meeting, to vote upon the proposals, were mailed to the stockholders. (1 A D 2d 1005.) This determination by the Appellate Division appears to be a square holding that stockholders who acquire their shares, after notices of a stockholders’ meeting to vote, on a proposed plan have been sent out, have no right to an appraisal by reason of the subsequent adoption of the plan. This court is, accordingly, constrained to hold that those who acquired their stock on or after April 15,1958, are not entitled to the remedy of appraisal.
It follows that Edna Coleman, Samuel I. Posen, Celia Seborer, Eva P. Shapiro and Miriam Wolf, whose petition admits that their stock was acquired after April 15, 1958, may not avail themselves of the remedy of an appraisal. The chart submitted by the corporation lists 6,800 shares held by Phillip Borelli as having been acquired after April 15,1958, but adds that “ objection will be withdrawn on satisfactory proof of beneficial ownership on April 15, 1958 ”. Phillip Borelli’s answer alleges that he was the beneficial owner, on April 15, 1958, of 10,900 shares of stock, and it annexes a schedule showing the dates of purchase, all of which antedate April 15, 1958, and the names of the brokers through whom the purchases were made. Affidavits by the brokers verifying the fact that all of said purchases were made by Borelli prior to April 15,1958, have now been submitted. *481 Since there is now satisfactory proof before the court, the objection to the 6,800 shares will be disregarded.
The chart submitted by the corporation lists shares held by Marie Baselice and Maria Mattiello as not entitled to an appraisal, for failure to present their certificates for. notation thereon of the demands for payment. The stockholders in question concede that they are not entitled to an appraisal.
there remains for consideration the question whether those who were beneficial owners of stock before April 15, 1958, are entitled to an appraisal in cases where the record owners of their stock voted, in person or by proxy, in favor of the proposals submitted at the stockholders’ meeting. But for the favorable vote of the record stockholders, those who were beneficial owners prior to April 15, 1958, would concededly be entitled to an appraisal of their stock (Matter of Deutschmann [Amer. Tel. & Tel. Co.], 281 App. Div. 14; Matter of Standard Coated Prods. Corp. [Bazar], 183 Misc. 736, affd. 271 App. Div. 1007).
The only shares affected by the determination of the question now to be discussed are 400 shares beneficially owned by Phillip Borelli on April 15, 1958, and 700 shares beneficially owned by Regina Lapidus on that date. Shares voted in favor of the directors ’ proposals, which were beneficially owned by Coleman, Posen, Seborer, Shapiro and Miriam Wolf, need not be considered since they were not acquired until after April 15, 1958 and, therefore, are not entitled to be appraised for that reason.
On April 14, 1958, the holder of record of 400 shares beneficially owned by Phillip Borelli was one Raymond S. Bernhardt. Bernhardt executed a proxy, dated April 23, 1958, authorizing votes in favor of the proposals to be voted upon at the meeting of May 8, 1958. The 400 shares were voted in favor of the proposals pursuant to this proxy. The shares in question had been purchased by Borelli from Bernhardt on February 13, 1958.
Section 20 of the Stock Corporation Law expressly limits the remedy of appraisal to any stockholder “ not voting in favor of such proposed sale, lease or exchange ”, and section 38 similarly limits that remedy to “ any holder of any such shares not in favor of such action ”. Section 47 of the Stock Corporation Law authorizes the board of directors of a stock corporation to fix a time, not more than 40 days prior to the date of a stockholders ’ meeting, “ as the time as of which stockholders entitled to notice of and to vote at such a meeting * * * shall be determined ” and it goes on to provide that “ all persons who were holders of record of voting stock at such time and no others shall be entitled to notice of and to vote at such meeting ’ ’. Pursuant to this *482 section, the directors had fixed ‘ ‘ the close of business on April 14, 1958, as the time as of which stockholders entitled to notice of and to vote at the meeting shall be determined ’ ’. The corporation takes the position that Bernhardt, as the record holder of the 400 shares, was entitled to vote them as he saw fit at the meeting of May 8 and that no one else, not even Borelli, the beneficial owner, was entitled to vote them at the meeting. Borelli, on the other hand, contends that the proxy given by the record holder of the 400 shares, Bernhardt, was not binding upon him and does not affect his right, as beneficial owner, to an appraisal of his shares and to payment of their appraised value.
As between the record holder of corporate stock and the beneficial owner thereof, the latter is the person entitled to vote the stock, but this is not true as between the beneficial owner and the corporation itself, for the corporation, under the express provisions of section 47 is entitled to accept votes cast by those who were stockholders of record on the date fixed by the directors as the determinative date and to reject votes cast by persons who were not stockholders of record on that date. The very purpose of the provisions of section 47, previously referred to, is to make it unnecessary for a corporation to conduct an investigation, as to each share of stock, to determine the identity of the beneficial owner. Any different rule would impose an intolerable burden upon corporations. The beneficial owner of stock is not left without remedy. Section 47 provides that “ Except in cases of express trust, or in which other provision shall have been made by written agreement between the parties, the record holder of stock which shall be held by him as security or which shall actually belong to another, upon demand therefor and payment of necessary expenses thereof, shall issue to such pledger or to such actual owner of such stock, a proxy to vote thereon ’ \ A court of equity may also compel execution of a proxy to the beneficial owner (5 Fletcher, Cyclopedia of Corporations [1952 ed.], p. 229). Furthermore, if the record holder of stock votes the same, without the beneficial owner’s consent, in a manner prejudicial to the interests of the beneficial owner, the latter may possess a cause of action against him for the resulting damages (Matter of Giant Portland Cement Co., 19 Del. Ch. 32 [1941]; see, also, 5 Fletcher, § 2060).
In Matter of Pruder & Son (302 N. Y. 52, 57) the Court of Appeals said: “ The obvious purpose of the statute [§ 47], to facilitate the conduct of corporate affairs and make for certainty therein, dictates that where there is a stock book, such record is ordinarily conclusive as to the right to vote ’ ’. Except where *483 the corporation is put on notice, by the provisions of a trust agreement filed with it (see Matter of Bacon, 287 N. Y. 1) or in some other manner, that the record holder is without authority to vote the stock standing in his name, it is entitled to accept his vote. The corporation has the right to assume that the record holder is authorized to vote the stock standing in his name. In Matter of Salvator (268 App. Div. 919) the court said that the failure of the beneficial owners to record the stock in their names ‘1 affords a presumption that they intended to permit the present record holders to vote the stock ”. In Atterbury v. Consolidated Coppermines Corp. (26 Del. Ch. 1, 13) the court declared that: ‘ ‘ the real owners must be taken to know that one of the consequences of permitting their stock to be held in the name of a nominee is that the latter will normally have the power to vote the shares without obtaining the consent of the owners, and that the corporation will recognize the registered owner as the true owner ’ ’.
The vote cast pursuant to the proxy given by Bernhardt, the record owner of Borelli’s 400 shares, is, therefore, binding upon Borelli (Bull & Co. v. Morris, 132 Misc. 509, affd. 226 App. Div. 868; 5 Fletcher, Cyclopedia of Corporations [1952 ed.], p. 232). In Vol. 5 Fletcher (p. 215) an article by Axe on Corporate Proxies (41 Mich. L. Rev. 225) is quoted with approval for the proposition that “where the books of the company are conclusive evidence of the right to vote, it may logically be contended that the right to vote being in the record holder even though there is a subsequent transfer, the transfer and assignment of the shares should not act as an effective revocation of * * * proxies ” given prior to the transfer. The article by Axe takes the position (41 Mich. L. Rev., p. 240) that where the books of the corporation are conclusive evidence of the right to vote, the record holder may give a valid proxy even after the sale, and that the sale does not revoke a proxy given prior thereto: “ The same considerations are present where the stockholder of record transfers his shares of stock and then issues a proxy to vote the same. * * * Since the corporation is entitled to recognize only the holder of record on the record date as the one eligible to vote, it would seem to follow that such a person has the power to give a proxy, even though he may have parted with the legal title to the shares between the record date and the date of the meeting ’ ’.
At page 239, the author states that “ It seems that the same considerations should govern in determining whether one who has transferred his shares can subsequently give a proxy and *484 whether a sale of shares of stock revokes a proxy given at a prior date ”.
To hold that Borelli, as beneficial owner of the 400 shares, is not bound by the vote in favor of the directors’ proposals cast by Bernhardt, the record holder of the shares, could lead to absurd and undesirable results. When directors of a corporation submit to the vote of the stockholders a proposal requiring the affirmative vote of two thirds of the outstanding stock, they have the right to assume that if the required vote is cast, not more than one third of the outstanding stock will have to be appraised and paid for. If, however, the beneficial owners of stock, held in street names and in the names of others, may disavow the votes cast by the record holders, the corporation may find itself required, notwithstanding the favorable vote of two thirds of the outstanding stock, to redeem much more than the remaining one third of the outstanding stock (a large amount of stock is commonly held in street names). The financial effects upon the corporation may, in such event, prove disastrous. The directors may find themselves confronted with a situation which, if they had been obliged to anticipate it as a possibility, would have influenced them not to adopt the original proposals or submit them for stockholders’ approval.
Counsel for Borelli contend, also, that Borelli’s physical presence at the stockholders’ meeting revoked the proxy. If Borelli were the record holder of the 400 shares and had, as such, given a proxy, there might, perhaps, be merit in this claim. Since Borelli was, however, not the record holder of the 400 shares, his presence at the meeting could not, by itself, effect a revocation of the proxy given by the record holder. The corporation was in no way apprised, as far as appears from the record, that Borelli was claiming the right to vote the 400 shares held in the name of Bernhardt. For aught the corporation knew, Borelli was present only as the owner of 2,700 shares of which he was the record holder on April 15, 1958.
The court accordingly holds that Borelli is not entitled to an appraisal as to the 400 shares purchased by him from Bernhardt.
A different situation is, however, presented by the 700 shares beneficially owned, on April 15,1958, by Regina Lapidus. These shares were purchased by Lapidus on or about July 12, 1952, but stood on the corporate books in the name of Steiner Rouse & Company, a brokerage house. Steiner Rouse & Company executed a proxy in favor of the proposals to be voted upon, for all the shares standing in its name on the corporation’s books, viz: 2,900 shares. This proxy was dated May 3,1958. Lapidus was not consulted by Steiner Rouse & Company as to her wishes prior *485 to the giving of the proxy. On or about May 6, 1958, two days prior to the stockholders ’ meeting, she instructed Steiner Bouse & Company to oppose the plan and asked for an appraisal of her shares. Pursuant to her instructions, Steiner Bouse & Company wrote a letter, dated May 6, 1958, to the company, reading: “ We wish to advise you and go on record, in accordance with your article on Page 6, ‘ Bights of Dissenting Stockholders ’, that we are demanding payment for the account of our client Mrs. Begina Lapidus of 700 shares, and seek an appraisal thereof. Kindly acknowledge receipt of this letter and advise if "there is any other current objection that has to be filed in order to protect our client’s rights in this matter ”.
This letter was sent by registered mail. A photostat of a return receipt, showing that delivery was received by the corporation on May 7, 1958, is attached to the brief submitted by Lapidus ’ attorney. A copy of the letter of May 6, 1958, is attached to the company’s petition, which acknowledges that it received the letter, characterized as ‘1 said demand ’ ’, prior to the meeting.
The Steiner Bouse & Company letter of May 6, 1958, clearly put the corporation on notice that Steiner Bouse & Company, as to 700 shares held by it for Begina Lapidus, was opposing the plan and demanding payment for the stock. An affidavit by one Yilagi, financial vice-president of the corporation, states that at no time prior to the meeting “ did the officers or transfer agents of the Corporation learn from Steiner Bouse & Co. or from respondent Begina Lapidus or from any other source that 700 of the shares of stock in the Corporation recorded on the books of the Corporation in the name of Steiner Bouse & Co. were held for the benefit of Begina Lapidus ”. It is difficult to understand how such a statement can be justified. The letter clearly apprised the corporation that 700 of the shares in the name of Steiner Bouse & Company were held for the account of Begina Lapidus, “our client”. No claim is made that 700 shares were on the books in the name of Begina Lapidus. Since the company had received a proxy from Steiner Bouse & Company for all the shares of which it was the record holder, viz: 2,900 shares, it must have been obvious that the 700 shares referred to in the letter were part of the 2,900 shares standing on the corporate books in the name of Steiner Bouse & Company.
Although the letter of May 6 did not actually state that Steiner Bouse & Company was thereby revoking its proxy as to the 700 shares held by it for Begina Lapidus, that was the clear import of the letter, for it stated that an appraisal and payment of the *486 shares was demanded and asked the corporation to sc advise if there is any other current objection that has to be filed in order to protect our client’s rights in the matter If a formal revocation of the proxy, as to 700 shares, was insisted upon by the corporation, it should, at least, have so advised Steiner Bouse & Company in answer to the latter’s request for advice as to what else had to be done to protect its client’s right to an appraisal.
The court holds that the letter from Steiner Bouse & Company revoked its proxy, prior to the meeting, as to the 700 shares beneficially owned by Begina Lapidus. As stated in Fletcher, Cyclopedia of Corporations (Vol. 5 [1952 ed.], p. 241), “ Bevocation of a proxy need not be in the form or manner provided in the proxy. It may be revoked orally, or by conduct ”.
The petitions are disposed of as indicated in this opinion.
Settle order.