SALOMON BROTHERS INC., a
Delaware corporation,
Petitioner,

v.

INTERSTATE BAKERIES CORPORA-
TION, a Delaware corporation,
Respondent.

Civ. A. No. 10,054.

Court of Chancery of Delaware,
New Castle County.

Submitted: Aug. 8, 1989.
Decided: Dec. 13, 1989.

Lawrence A. Hamermesh, and Alan J. Stone, of Morris, Nichols, Arsht & Tunnell, Wilmington, for petitioner.

R. Franklin Balotti, and James C. Strum, of Richards, Layton & Finger, Wilmington, of counsel: Shook, Hardy & Bacon, Kansas City, Mo., for respondent.

## OPINION

BERGER, Vice Chancellor.

This is the decision on a motion for summary judgment brought by Interstate Bakeries Corporation ("IBC"), the respondent in an appraisal proceeding. Petitioner, Salomon Brothers Inc. ("Salomon"), the record and beneficial owner of 122,300 shares of IBC stock, seeks appraisal of those shares in connection with the April 29, 1988 merger of IBC with IBC Acquisition Corporation ("Acquisition"). In the course of discovery, IBC learned that Salomon began purchasing its IBC shares after the merger plans had been announced. Because of the timing of Salomon's purchas-

es, IBC contends that Salomon has lost its right to seek appraisal.

■ The relevant facts are undisputed. On September 13, 1987, the IBC board approved a management leveraged buyout. The two step transaction included a tender offer at $40.50 per share and a follow up merger pursuant to which each IBC share was to be exchanged for 1.62 shares of $3.50 Cumulative Exchangeable Redeemable Preferred Stock of IBC (the "Preferred"). The tender offer was completed on October 26, 1987, at which time Acquisition purchased 88.9% of IBC's common stock.

Salomon began purchasing IBC common stock for its risk arbitrage account on November 11, 1987, and continued that purchasing through mid-January, 1988. During this time, Salomon knew about the planned merger and also knew that Acquisition had obtained sufficient shares to carry out the merger. On March 25, 1988, IBC issued the merger proxy statement. The record date was set at March 25, 1988, and the stockholders' meeting was held on April 29, 1988. Salomon delivered a timely demand for appraisal and satisfied the other requirements for perfection of appraisal rights as expressly contained in 8 *Del.C.* § 262.

IBC's primary argument is that the appraisal statute was not designed to protect those who wish to speculate on a judicial remedy and that Salomon acted in bad faith by purchasing shares with notice of the merger and then demanding appraisal. Alternatively, IBC argues that Salomon is estopped from demanding appraisal. For the reasons that follow, I conclude that Salomon has not forfeited this statutory right.

The judicial determination of fair value pursuant to § 262 is a "statutory right ... given the shareholder as compensation for the abrogation of the common law rule that a single shareholder could block a merger." *Francis I. duPont & Co. v. Universal City Studios,* Del.Ch., 343 A.2d 629, 634 (1975). That veto power at common law "made it possible for an arbitrary minority to estab-

lish a nuisance value for its shares by refusal to cooperate." *Voeller v. Neilston Warehouse Co.*, 311 U.S. 531, 535, n. 6, 61 S.Ct. 376, 378, n. 6, 85 L.Ed. 322 (1941). Thus, at common law, the majority effectively had to buy out the minority at a price of the minority's choosing in order to proceed with a transaction. *Anderson v. International Minerals & Chemical Corp.*, Ct.App., 295 N.Y. 343, 67 N.E.2d 573, 576 (1946). The ability of a dissenting stockholder to prevent a merger led to the enactment of statutes permitting fundamental corporate change upon some form of majority vote, *see Schenley Indus. v. Curtis*, Del.Supr., 152 A.2d 300, 301 (1959), and appraisal rights were provided as a *"quid pro quo* for the minority's loss of its veto power." *In re Shore*, 67 A.D.2d 526, 415 N.Y.S.2d 878, 882 (1979).

This history of our appraisal statute does not support IBC's argument that the statute was designed to protect only those stockholders who purchased their shares prior to the announcement of a merger. Rather, its purpose was to replace the stockholder's veto power with a means of withdrawing from the company at a judicially determined price. None of the Delaware cases cited by IBC suggests otherwise. Indeed, one of those cases, *Felder v. Anderson, Clayton & Co.*, Del.Ch., 159 A.2d 278 (1960), noted that "a dissenting stockholder has an absolute right to an appraisal...." *Id.* at 286. The court there assessed whether the dissenting stockholder was acting in good faith only in connection with its discretionary decision on whether to allow interest pursuant to § 262(h). *See also Meade v. Pacific Gamble Robinson Co.*, Del.Supr., 58 A.2d 415 (1948) (where the court considered the dissenting stockholders' good faith in connection with the allocation of costs).

In rejecting IBC's statutory purpose argument, I am aware that several New York courts have denied appraisal rights to dissenting stockholders on facts similar to those presented here. In *Application of Stern*, N.Y.Supr., 82 N.Y.S.2d 78, 82 (1948), the court found that stockholders who had bought shares "in spite of" a plan of merger were faced with "a choice of their own selection" and therefore were not entitled to appraisal. The court held that the term "stockholder" as used in the relevant statute must be held to mean "bona fide stockholder"—one who acquired his shares prior to the promulgation of a merger plan—in order to give effect to the purpose of the appraisal statute. The court explained its reasoning as follows:

It requires no extended argument to prove that the purpose and policy of [the appraisal statute] will be defeated if a petition for appraisal can be predicated on shares of stock acquired after a plan for merger has been adopted by the directors and fully publicized. [The appraisal statute] was intended to avoid impediments to corporate activities consented to by a large majority of the shareholders. It was not intended as an additional hazard, which is what it necessarily becomes if shares acquired after promulgation of the plan by directors retain the right of appraisal.

*Id. See also Dynamics Corporation of America v. Abraham & Co.*, N.Y.Supr., 4 Misc.2d 50, 152 N.Y.S.2d 807, 812, *modified*, 1 A.D.2d 1005, 153 N.Y.S.2d 533 (1956); *Flagg–Utica Corp. v. Baselice*, N.Y.Supr., 14 Misc.2d 476, 178 N.Y.S.2d 860, 865 (1958).

I am not persuaded by the *Stern* ruling. If appraisal rights were granted as the *quid pro quo* for the loss of veto power, there is no apparent reason why all stockholders who formerly could have exercised that veto power should not now be able to exercise appraisal rights [1]. The common law veto power was exercisable without reference to the stockholder's motives and

---

1. This Court is aware of only one other jurisdiction that has considered this question. In *Booma v. Bigelow–Sanford Carpet Co.*, 330 Mass. 79, 111 N.E.2d 742 (1953), the court held that a stockholder who purchased stock after the record date set for the vote on a merger proposal and who, therefore, did not cast a vote on the merger, was not entitled to an appraisal. This holding is not inconsistent with the view that appraisal is available to all stockholders who have been deprived of their common law veto power since only stockholders eligible to vote on a particular transaction would have been able to exercise that veto.

it seems reasonable to assume that appraisal rights, likewise, are not determined by reference to a stockholder's purpose.

IBC notes, in its argument, that Delaware courts have been willing to define the term "stockholder" as used in the appraisal statute to mean "record stockholder." *See Salt Dome Oil Corp. v. Schenck*, Del. Supr., 41 A.2d 583, 589 (1945). Thus, IBC suggests, it would be appropriate for this Court to further define the term "stockholder" to exclude one who purchases with notice of the contested transaction. As I see it, however, the same reasoning that prompted our courts to read "stockholder" as "record stockholder" requires that IBC's interpretation be rejected. Recently, in *Enstar Corp. v. Senouf*, Del.Supr., 535 A.2d 1351 (1987), the Delaware Supreme Court reaffirmed the principles it set out in *Salt Dome Oil Corp.*, stating that the parties to a transaction that involves a change in the stockholders' relationship to the corporation, such as a merger, require certainty in determining who the stockholders are and the extent of any dissent. The corporation achieves this certainty and avoids entangling itself in conflicts between record and beneficial owners by looking only to the record owners. Thus, by reading "stockholder" to mean "record stockholder" the courts have furthered the goal of seeking an "expedient and certain appraisal of stock." *Enstar*, 535 A.2d at 1356.

By contrast, IBC's interpretation, if accepted, could add to the appraisal process a variety of collateral issues that would tend to frustrate the goals of expediency and certainty. The corporation would not be able to rely upon its list of record stockholders, because that list would not establish whether, for example, the same beneficial owner changed its record ownership from one nominee to another. Other issues that might arise would include the effect, if any, of intervening transactions[2]; changes in the corporation's overall financial condition; or changes in any of the merger terms between the purchase and merger dates. In addition, questions as to the dissenting stockholder's actual knowledge of the terms of the pending proposal could also complicate and delay the appraisal process.

Based upon the foregoing, I am satisfied that § 262 should not be construed in the manner IBC advocates. I find no historical basis from which to infer a legislative intent to give the term "stockholder" more than its usual and ordinary meaning. *See McGinnes v. Department of Finance*, Del. Ch., 377 A.2d 16, 20 (1977). Moreover, our courts have held that, "where a provision is expressly included in one section of a statute, but is omitted from another, it is reasonable to assume that the Legislature was aware of the omission and intended it." *Giuricich v. Emtrol Corp.*, Del.Supr., 449 A.2d 232, 238 (1982). As IBC notes, the legislature chose to enact a date-of-purchase restriction in 8 *Del.C.* § 327, which governs a stockholder's right to bring a derivative suit. Given the inclusion of such a requirement in § 327, and the omission of same in § 262, this Court may reasonably assume the Legislature to have intended the omission. In sum, if the limitations urged by IBC are to be engrafted upon § 262, it is a matter for the legislature, not the judiciary.

■ IBC argues, alternatively, that Salomon should be denied appraisal rights as a matter of equity. It contends that Salomon's position is the same as that of a stockholder who attempts to bring a deriva-

---

**2.** In its brief, Salomon points to the acquisition of ten bakery subsidiaries of American Bakeries Company as an intervening transaction. This purchase, by Acquisition, was effected in January, 1988, pursuant to a November 20, 1987 agreement by Acquisition's parent. Under the proposed merger terms, IBC assumed the debt that Acquisition incurred in this transaction and that assumption, according to the March 25, 1988 proxy statement, has "important consequences to the holders of" the preferred stock given to IBC's minority stockholders under the merger terms. Proxy Statement at 11.

In light of the decision reached herein, this Court need not consider the impact of the January, 1988 transaction. However, it does point out the difficulties that would attend an appraisal proceeding where any change in the corporation's structure or operations arguably would bear upon the determination of whether a stockholder such as Salomon is entitled to appraisal.

tive suit complaining of wrongs that predate the stockholder's first purchase of stock. IBC points out that in *Brown v. Automated Marketing Systems, Inc.,* Del. Ch., Civil Action No. 6715, Brown, V.C., 1982 WL 8782 (March 22, 1982), a derivative plaintiff's suit was dismissed for lack of standing when it came to light that plaintiff purchased her shares after the public announcement of the merger she was attacking. In the *Brown* decision, this Court recognized the general equitable principle that a stockholder who has suffered no injury may not complain about a prior wrong done to the corporation.

If Salomon were attempting to bring a derivative suit, perhaps the equitable principles reaffirmed in *Brown* would be controlling. However, Salomon is not complaining of any wrong to the corporation. Rather, it is exercising a statutory right that it has been given as a stockholder. Accordingly, the equitable principle that one who has not been injured may not complain finds no application here. Salomon alleges no injury and brings no complaint. It merely seeks the full exercise of its rights as a stockholder, including the right to seek appraisal.

 Finally, IBC argues that Salomon's purchase of the stock with notice of the merger constitutes acquiescence and waiver or estoppel. To claim waiver or acquiescence, IBC would have to show that Salomon, by its conduct or otherwise, intentionally relinquished any appraisal rights it had or specifically intended to approve or agree to the terms of the merger. *See Realty Growth Investors v. Council of Unit Owners,* Del.Supr., 453 A.2d 450, 456 (1982); 28 Am.Jur.2d *Estoppel and Waiver,* § 57 (1966) (acquiescence requires at least conduct reasonably implying intent to acquiesce). IBC has asserted no such claim and the undisputed facts indicate that such a claim would fail. The same is true of the estoppel argument. In order to state such a claim, IBC would have to demonstrate some sort of detrimental reliance or change of position. *See Hartman v. Buckson,* Del.Ch., 467 A.2d 694, 697 (1983). It has offered no evidence to support such a claim.

In conclusion, I find that Salomon, having otherwise perfected its appraisal rights pursuant to 8 *Del.C.* § 262, is not foreclosed from obtaining an appraisal of its IBC stock for the reason that Salomon purchased those shares after the terms of the merger had been announced. I find nothing in the purpose or language of § 262 that would defeat Salomon's entitlement to an appraisal and I find nothing inequitable about an investor purchasing stock in a company after a merger has been announced with the thought that, if the merger is consummated on the announced terms, the investor may seek appraisal. Accordingly, IBC's motion for summary judgment is denied. IT IS SO ORDERED.