## IN RE CAMDEN TRUST COMPANY.

Argued June 4, 1938—Briefs Submitted August 24, 1938—Decided
September 28, 1938.

Before Justice HEHER, at chambers, pursuant to section
17:4-90, *Rev. Stat.* 1937.

For the petitioner, *William C. Gotshalk, pro se.*

For the Camden Trust Company, *Albert S. Woodruff.*

HEHER, J. The facts have been stipulated. On April 7th,
1938, at separate meetings duly called, the stockholders of

the Camden Safe Deposit and Trust Company and the West Jersey Trust Company ratified an agreement of merger of the two companies under the name of Camden Trust Company, pursuant to the authority conferred by sections 17:4-80, *et seq., Rev. Stat.* 1937. Petitioner was a stockholder of the West Jersey Trust Company; and, at the meeting of the company's stockholders, he "voted his twenty shares of stock against said merger." He also voted in the negative on a motion to adopt a resolution authorizing that company "to borrow money from a federal agency;" and he refused to participate in the election of temporary directors of the continuing corporation. He took no action at variance with his disapproval of the proposed merger.

The approval of the commissioner of banking and insurance having been had, the documentary evidence of the merger required by section 17:4-86 was filed and recorded on April 11th. On April 26th, petitioner served upon the continuing body corporate "a written notice and demand for payment for his shares." He now invokes the procedure for the appraisement of his stock set up in section 17:4-90; and the bank, denying the asserted right, maintains that the statute "clearly contemplates the application of this troublesome and expensive remedy only where the stockholder both objects to the merger and demands payment for his shares, and then only, where the merging companies complete the merger after the demand for payment for the stockholder's shares." The statute is interpreted as imposing upon the objecting stockholder the duty of making inquiry at the stockholders' meeting as to "when the merger is to take effect," and if it is to become effective "in less than twenty days, he must demand payment before the merger is to be effected;" otherwise, the twenty days' provision is applicable.

I do not so read the statute. Section 17:4-90 provides that a stockholder "not voting in favor of the agreement of merger," at the meeting called pursuant to the statute, "may, at the meeting, or within twenty days thereafter, object to the merger and demand payment for his shares." This does not

in terms, or by fair inference, charge the dissenting stockholder, if he attends the meeting, with the duty of inquiry as to when the merger, if approved by all parties, is to become formally effective, and, if it is to be so effectuated within twenty days, also to demand then and there, or at sometime before its formal effectuation, payment for his shares on pain of the loss of the right if the merger be perfected. The right is distinctly granted to a stockholder "not voting in favor" of the merger to make objection thereto and demand the value of his shares "at the meeting" called to act on the proposal, "or within twenty days thereafter;" and it is not otherwise conditioned.

In my view, the design of this provision was to give the non-assenting stockholder twenty days in which to determine whether he would continue his stockholdings in the continuing corporation or take the value thereof. It is to be here observed that the statute plainly distinguishes between a negative vote or failure to vote at the stockholders' meeting and a subsequent objection to the merger.

Notwithstanding the insistence of the bank to the contrary, I discern no statutory considerations calling for the demand for payment before the consummation of the approved merger agreement. By express provision (section 17:4-86), the merger becomes binding upon the contracting parties when ratified by their respective stockholders in the manner therein prescribed. The filing and recording of the · documentary evidence thereof constitute the mere formal execution of the legally binding contract.

I regard the subsequent qualifying introductory clause, "if the merger takes effect at any time after the demand," as intended to confer upon the dissentient stockholder this right to an appraisal of his shares only in case the proposed merger actually becomes effective. It is to be borne in mind, in this connection, that the ratification of all the participants is requisite to the consummation of the proposed merger. Any doubt arising from a lack of precision and accuracy in expression is to be resolved in the light of the context and the

general statutory purpose to preserve and effectuate the contractual rights of a dissident stockholder. The statute is to be liberally construed to advance that outstanding object. It is hardly reasonable to suppose that the legislature designed to bestow this right where the merger became operative twenty days or more after the stockholders' meeting, and to deny it where that eventuated within the period. Assuming the existence of the power for present purposes, that is an arbitrary classification that is not to be imputed to the legislature where the language reasonably admits of an interpretation more in consonance with the essential statutory end.

It suffices to add that there is nothing to suggest estoppel or waiver and acquiescence.

I shall hear counsel on the qualifications of the appraisers.