74 N.J. Super. 92 (1962)
180 A.2d 535
BACHE & CO., A LIMITED PARTNERSHIP, PLAINTIFF-RESPONDENT,
v.
GENERAL INSTRUMENT CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1962.
Decided May 2, 1962.
*94 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. James J. Casby, Jr., argued the cause for appellant (Messrs. Bleakly, Stockwell & Zink, attorneys).
Mr. Ira Rabkin argued the cause for respondent (Messrs. Evoy & Feinberg, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant corporation appeals from a Chancery Division order declaring plaintiff entitled, under N.J.S.A. 14:12-7, to the appraisal of certain stock it held for one of its customers.
Plaintiff, by order to show cause based on complaint and affidavit, sought the appraisal as a minority stockholder dissenting to a proposed merger involving the corporation. Defendant answered and filed a motion to dismiss, with supporting affidavit, to which plaintiff replied. The trial court, after a hearing and on the basis of the pleadings and affidavits, entered the order here in question. We granted defendant's application for leave to appeal.
Plaintiff, a stock brokerage firm, was on April 7, 1961 the registered owner of 33,400 shares of common stock of defendant corporation. That was the date defendant had set as the record date for a special meeting of stockholders to be held May 10, 1961 to consider, among other things, the merger of Pyramid Electric Company with and into defendant corporation. Among the 33,400 shares were 2,690 which plaintiff held in its "street name" for a certain customer who was the true owner.
On May 2, 1961 plaintiff wrote defendant that it held 2,690 common shares "for one customer who has asked us to dissent to the proposed merger," and formally advised that it was objecting to the proposed merger and would vote the shares against the plan at the May 10 meeting. Plaintiff further stated it was in the process of forwarding a duly executed proxy form to effect such vote. Defendant *95 claims it was never informed of the name of the beneficial owner of the shares. Plaintiff, however, asserts that one Dorato, an attorney in its law department, had informed defendant by telephone of the name, although defendant had never asked for it.
At the May 10 stockholders' meeting plaintiff voted 18,901 shares in favor of the merger and 2,804 shares against. The plan having been approved by a majority of the stockholders, the merger agreement was filed in the office of the Secretary of State on May 16, 1961.
Plaintiff thereupon filed its complaint on June 15, 1961, together with supporting affidavit, demanding appraisal of the 2,690 shares and payment of an award therefor. The complaint was timely, having been filed on the 30th and last day of the period fixed by N.J.S.A. 14:12-7. The complaint did not join or name the beneficial owner of the shares. Defendant filed its answer, motion to dismiss and supporting affidavit on June 28, 1961. The hearing was adjourned from June 30, the original date fixed, to August 3, 1961. Meanwhile, on July 26, plaintiff filed the affidavit of Dorato, alleging he had prepared and mailed the May 2 letter to defendant, and that plaintiff had in its possession certain numbered certificates totalling 2,690 shares, registered in its name, dated prior to April 7, 1961 and held for the account of Colonial Realty Corporation, the beneficial owner. Dorato further stated that defendant had at no time requested the name of the customer for whom plaintiff was formally dissenting. However, in the course of a telephone conversation on June 2, 1961 with one Mulcahy  who, it appears, is a member of the law firm representing defendant  he had informed Mulcahy that the dissent was being made for Colonial Realty Corporation, the beneficial owner of the 2,690 shares.
The matter was argued before the trial court on August 3, at which time the order under appeal was entered. Thereafter defendant, on August 11, 1961, filed an affidavit by Mulcahy, apparently for the purpose of rebutting the Dorato *96 affidavit of July 26. Mulcahy stated he first learned of the Colonial Realty Corporation on August 4 when he read the Dorato affidavit, and denied the allegation contained therein that Dorato had informed him of the name of plaintiff's customer during the phone conversation of June 2. Plaintiff moved in the Chancery Division for an order expunging the Mulcahy affidavit from the record because, among other things, it was filed after the August 4 order had been entered. No action on that motion seems to have been taken.
Defendant argues two grounds for reversal: (1) since plaintiff is not the beneficial owner of the 2,690 shares, it should not be permitted to initiate an action under N.J.S.A. 14:12-7, and (2) plaintiff, having voted other stock in favor of the merger, is precluded from demanding appraisal of the stock it voted against the proposal.

I.
N.J.S.A. 14:12-7 gives the right of appraisal to any stockholder of a merging corporation not voting in favor of the merger agreement and who "shall dissent therefrom and shall refuse or neglect to convert his stock into the stock of such consolidated corporation, or to dispose thereof in the manner and on the terms specified in the agreement for merger * * *, and at any time prior to the vote on such merger * * * shall give to the corporation in which he is a stockholder written notice of his dissent * * *." Such stockholder may, within 30 days after the adoption and filing of the merger agreement, initiate proceedings in the Superior Court for the appointment of three disinterested appraisers to appraise the full market value of his stock "without regard to any depreciation or appreciation thereof in consequence of the merger * * *."
Defendant insists that the Legislature, when it used the word "stockholder" in the appraisal statute, intended to refer to the beneficial interest only. It cites no New Jersey *97 authority for that position, and indeed there is none. Nor does it point to any statutory language which expressly or by implication indicates that only the beneficial owner may bring a proceeding to have his shares appraised. When we inquired at oral argument how the merged corporation could in any way be affected by permitting plaintiff, as registered owner, to bring the present action, counsel for defendant frankly admitted that there was no answer  it made no real difference to the corporation whether plaintiff or the beneficial owner brought the appraisal proceedings.
There are jurisdictions where the registered owner, and only the registered owner, may seek appraisal, but this is because the controlling statute expressly limits appraisal to such owners. See, for example, In re Kreher, 379 Pa. 313, 108 A.2d 708 (Sup. Ct. 1954); Era Co., Ltd. v. Pittsburgh Consolidation Coal Co., 355 Pa. 219, 49 A.2d 342 (Sup. Ct. 1946). Absent such legislation, we find the decisions in conflict as to whether the word "stockholder" in an appraisal statute means only the registered owner or only the beneficial owner. See 15 Fletcher, Cyclopedia of the Law of Private Corporations (1961 ed.), § 7165.2, pp. 292-3, and 13 ibid., § 5894, pp. 325-6.
In re Rowe, 107 Misc. 549, 176 N.Y.S. 753 (Sup. Ct. Sp. T. 1919), was a case where the beneficial owner sought appraisal. A single judge held that "stockholder" in the New York appraisal statute meant not only those in whose name the stock was registered, but also those who held shares by unrecorded assignment. Rowe does not stand for the proposition that only the beneficial owner may bring the appraisal action. In Application of Friedman, 184 Misc. 639, 54 N.Y.S.2d 45 (Sup. Ct. Sp. T. 1945), modified 269 App. Div. 834, 56 N.Y.S.2d 516 (App. Div. 1945), where (as in Rowe) appraisal was sought by the beneficial owners of shares, the court held that it could envision no commercial expediency or supposed hardship on the corporation as justification for construing "stockholder" to mean "registered stockholder." It then went on *98 to say, by way of dictum and without supporting rationale, that the word "plainly means" that only the actual owner of the stock is entitled to rights thereunder, even though his shares stand in the name of another on the corporate books. In re Rogers, 102 App. Div. 466, 92 N.Y.S. 465 (App. Div. 1905), cited by defendant as authority for its view, is not in point. The court, in a brief per curiam opinion, there found that the person bringing the appraisal action was, in fact, not the owner of the stock, and therefore had no interest entitling him to maintain the proceeding.
In a well-reasoned opinion, Salt Dome Oil Corp. v. Schenck, 28 Del. Ch. 433, 41 A.2d 583, 158 A.L.R. 975 (Sup. Ct. 1945), the court squarely held, in construing an appraisal statute akin to our own, that only the registered holder of stock is a "stockholder," within the sense of the word as used in the Delaware act, entitled to object to a proposed merger agreement. That case was followed in Application of General Realty & Utilities Corp., 28 Del. Ch. 284, 42 A. 24 (Ch. 1945), and Coyne v. Schenley Industries, Inc., 155 A.2d 238 (Del. Sup. Ct. 1959).
In general, the legal owner, rather than the beneficial owner, is considered the "stockholder" or "shareholder." 11 Fletcher, op. cit. (1958 ed.), § 5085, pp. 48-53. As defined in 1 Oleck, Modern Corporation Law (1958), § 3, p. 13, a "shareholder" is "a person listed on the corporation books as the owner of shares in that corporation * * *." And cf. N.J.S.A. 14:10-5 (3d par.). Although ownership of shares may be transferred by endorsement of the certificate, R.S. 14:8-27, the corporation may always recognize the exclusive right of the registered owner to vote as the owner of the shares. R.S. 14:8-29, and cf. Ward v. Jersey Central Power & Light Co., 136 N.J. Eq. 181, 182 (Ch. 1945).
We are not concerned here with the status of an equitable owner of stock who seeks to pursue an equitable remedy. Rather, the question is whether there is anything in the *99 statute which would inhibit plaintiff from bringing the present appraisal action as registered owner of the 2,690 shares. As was pointed out by the Delaware court in the Salt Dome Oil case, 28 Del. Ch., at page 437; 41 A.2d, at page 585  and as we have just observed  "stockholder" is ordinarily taken to mean the holder of the legal title to shares: "In most jurisdictions registration, or its equivalent, is essential to pass the legal title as against the corporation; and the unregistered transferee is not entitled to the rights and privileges of a stockholder in his relations with the corporation. Whatever may be the equitable rights that may arise by a delivery of the stock certificate accompanied with a power of attorney for its transfer, the legal title and legal rights and liabilities of the stockholder of record remain unchanged until the transfer is actually accomplished. The record owner may be but the nominal owner and, technically, a trustee for the holder of the certificate, but legally he is still a stockholder, and may be treated as the owner by the corporation."
In this case, as in the Delaware case, we find nothing in our General Corporation Act to support the idea that an unregistered beneficial owner of stock is intended to have the status of a stockholder in intracorporate affairs. As the Salt Dome Oil court observed:
"* * * The right to notice of corporate meetings and proposals, to attend and vote at meetings for the election of directors and on other matters submitted, to inspect the corporate books and records, and to participate in dividends and profits and in the net assets of the corporation on dissolution, are the most material rights incident to stock ownership. Other rights are for the most part incidental. None of these rights which in their totality constitute dominion is exercisable directly by the non-registered transferee of stock. With respect to matters intracorporate affecting the internal economy of the corporation, or involving a change in the relationship which the members bear to the corporation, there must be order and certainty, and a sure source of information, so that the corporation may know who its members are and with whom it must treat, and that the members may know, in a proper case, who their associates are. Especially is this true in a merger proceeding which is essentially an intracorporate affair. The merging *100 corporations are entitled to know who the objecting stockholders are so that the amount of money to be paid to them may be provided. The stockholders in general are entitled to know the dissentients and the extent of the dissent. [citing case] The corporation ought not to be involved in possible misunderstandings or clashes of opinion between the non-registered and registered holder of shares. It may rightfully look to the corporate books as the sole evidence of membership. On the other hand, the non-registered holder of a stock certificate is deprived of no essential right. He has it in his power to record the transfer of his shares and thereby become a member of the corporation in the full legal sense. If, for any reason, he chooses to allow his shares to be registered on the corporate books in the name of another, it is not a denial of his right of actual ownership to require him to establish his rights and pursue his remedy through the nominee of his own selection. Any disadvantage is the result of his own non-action. To hold that one who does not possess the essential rights incident to stock ownership is, nevertheless, a stockholder as against the corporation, and as such entitled to interject himself in matters of internal management, is to disregard essential verities and must lead to unnecessary confusion." (28 Del. Ch., at pages 446-7; 41 A.2d, at pages 588-9)
The court concluded that an unregistered holder of stock is not a "stockholder" entitled to intervene in intracorporate matters "unless that status is given to him expressly or by unavoidable intendment; and, consequently, only the registered holder of stock is a `stockholder' within the sense of the word as used in [the Delaware statute], entitled to object to a proposed agreement of merger."
It should be recalled that by reason of the letter plaintiff sent on May 2, defendant was alerted to the fact that plaintiff held 2,690 common shares "for one customer who has asked us to dissent to the proposed merger." If defendant was at all concerned about who the true owner of the shares might be, it could have inquired. At the time the trial court acted on August 4, 1961, it appeared from the pleadings and affidavits on file that defendant's Mr. Mulcahy had been informed by plaintiff's Mr. Dorato that the dissent with respect to the shares in question was being made by plaintiff for Colonial Realty Corporation, the beneficial owner.

*101 II.
Defendant's second argument on appeal is that since plaintiff had voted in favor of the merger, it was automatically disqualified from seeking appraisal of any shares it held as registered owner, and its petition should therefore have been dismissed. We must not blind ourselves to the realities of present-day security practices, or the complex mechanisms of the stock market. A brokerage house like plaintiff almost always holds blocks of stock in its "street name" for various beneficial owners. If defendant is correct in its position, it would logically follow that unless all of plaintiff's customers voted the same way, those voting against the merger  if they owned only a minority of the shares held by plaintiff  would have any appraisal rights normally theirs completely wiped out.
The basic purpose of requiring a stockholder who opposes a merger to object in writing prior to the stockholders' meeting called to vote upon the proposal, is to inform the corporation and its other stockholders of the number of possible dissenters, and therefore the potential amount of cash which will be required to pay for their shares. The management and the majority stockholders are thus put on notice, before they act and vote for a merger, of the maximum number of shares which may have to be paid off in cash. Zeeb v. Atlas Powder Co., 32 Del. Ch. 486, 490, 87 A.2d 123, 125 (Sup. Ct. 1952); Ballantine on Corporations (rev. ed. 1946), § 298, p. 704. As the court said in Zeeb, "it is not manifestly unreasonable to require the corporation to inquire of the stockholder concerning the existence of the agency if, under the circumstances, it is in doubt of the actual fact. The only purpose of requiring an objection in writing prior to the stockholders' meeting is to give some advance notice of possible dissentients. The purpose is not to make known to a certainty those who will dissent, for as has been pointed out, a stockholder who objects in writing is still at liberty to vote his shares in favor of the *102 merger, or even to vote his shares against the merger and then conclude to accept its benefits." (32 Del. Ch., at pages 494-5; 87 A.2d, at page 127)
Defendant argues that an appraisal statute is not in aid of dissenting shareholders alone, but is as well in aid of majority stockholders and also the public welfare. We agree. Salt Dome Oil Corp. v. Schenck, above, 28 Del. Ch., at page 442, 41 A.2d, at page 587. But we cannot agree with defendant's position that because plaintiff voted the major part of the shares standing in its name in favor of the merger, the rights of the dissenters should be ignored. If defendant were correct, it could dismiss completely the thought of an appraisal demand as to any dissenting shares contained in a split vote, even if demand were made within the period allowed for such application and even if the company had been informed that one beneficial owner had instructed the record holder (plaintiff) to vote the owner's shares against the merger.
Clearly, defendant was fully apprised as to the possible number of dissenting shares here involved. Were we to subscribe to defendant's argument, we would have to assert that plaintiff, because it voted more shares for the merger than against, has in toto voted for the merger. To do this would be to ignore the distinctive character of plaintiff as a stock brokerage firm, to overlook the character of modern-day security transactions, and to wipe out a beneficial owner's rights which the statute is specifically designed to protect. A liberal construction, rather than a rigid and a technical one, should govern in a situation like the present one. Cf. In re Camden Trust Co., 121 N.J.L. 222, 225 (Sup. Ct. 1938); In re Janssen Dairy Corp., 2 N.J. Super. 580, 585-6 (Law Div. 1949), citing N.J. & Hudson River Ry. Co. v. American Electrical Works, 82 N.J.L. 391, 398 (E. & A. 1911), where Chief Justice Pitney dealt with an appraisal action under a statute similar to N.J.S.A. 14:12-6 and 7. We deem the number of shares voted against the merger, and not the identity of the dissenter, to be the important consideration. *103 If knowledge of the true owner is of any importance, the name of that owner was disclosed to defendant, without any inquiry on its part.
To deny one beneficial owner the right to obtain an appraisal because the brokerage house has followed the instructions of other such owners by transmitting their wishes to the company (here, by casting their votes in favor of the merger at the meeting called for that purpose) would be to deny the full effectiveness of a purchase of stock bought and held in a "street name." Such a contract of purchase is declared "valid and effective" by R.S. 46:34-2, "even though such purchase * * * may not be made in the customer's name and even though as between the broker and customer the securities * * * so purchased * * * may not have been actually delivered to * * * such customer." One might well ask how such a contract can be "effective" as between broker and customer if the right of appraisal is lost by the brokerage house's following its customers' directions. A liberal reading of the statute requires that plaintiff be given the right to demand appraisal of the stock of Colonial Realty Corporation.

III.
One minor matter requires determination  defendant's filing of the Mulcahy affidavit after the trial court had heard and determined the matter. That affidavit formed no part of the record upon which the Chancery Division judge acted. However, even if we consider the late affidavit, we reach the same conclusion.
The order under appeal is affirmed.