190 A.2d 752 (1963)
REYNOLDS METALS COMPANY, Defendant Below, Appellant,
v.
COLONIAL REALTY CORPORATION et al., Plaintiff Below, Appellees.
Supreme Court of Delaware.
April 29, 1963.
Aaron Finger, of Richards, Layton & Finger, Wilmington, for appellant.
Aubrey B. Lank, of Theisen & Lank, Wilmington, for appellees.
SOUTHERLAND, C. J., and WOLCOTT and TERRY, JJ., sitting.
*753 SOUTHERLAND, Chief Justice.
This case involves the right of an unregistered stockholder to obtain appraisal of his stock after a merger. The facts are these:
On August 1, 1961, Tilo Roofing Company, Inc., a Delaware corporation, was duly merged into Reynolds Metals Company, also a Delaware corporation, under the provisions of the General Corporation Law. At and before the Reynolds stockholders meeting, Bache & Co., a New York firm of stockbrokers, was the record owner of 81,647 shares of Reynolds common stock. It voted 29,475 shares in favor of the merger. It also voted 29,728 shares against the merger, having duly filed written objection thereto before the meeting. These latter shares were beneficially owned by Colonial Realty Corporation. Thereafter Bache & Co. made due demand upon Reynolds for payment of $80 a share for the account of its customer. The demand was refused.
On December 14, 1961, Bache & Co. filed a petition for the appointment of an appraiser. Defendant moved for summary judgment. The case was heard on the pleadings, affidavits and deposition. The Vice Chancellor denied the motion, ruling that petitioner was entitled to the appraisal. Defendant appeals.
The sole question in the case is whether the vote in favor of the merger cast by the broker as the registered holder of certain shares makes the broker ineligible under the law to demand appraisal in respect of other shares.
8 Del.C. § 262(b) provides as follows:
"The corporation resulting from or surviving any consolidation or merger shall within 10 days after the date on which the agreement of consolidation or merger has been filed and recorded, notify each stockholder in any corporation of this State consolidating or merging, who objected thereto in writing and whose shares were not voted in favor of such consolidation or merger, and who filed such written objection with the corporation before the taking of the vote on such consolidation or merger, that the agreement has been filed and recorded. The notice shall be sent by registered mail, return receipt requested, addressed to the stockholder at his last known address as it appears on the books of the corporation. If any such stockholder shall within 20 days after the date of mailing of the notice demand in writing, from the corporation resulting from or surviving such consolidation or merger, payment for his stock, such resulting or surviving corporation shall, within *754 30 days after the expiration of the period of 20 days, pay to him the value of his stock on the date of the recording of the agreement of consolidation or merger, exclusive of any element of value arising from the expectation or accomplishment of such consolidation or merger."
Under these provisions a dissenting stockholder, to obtain appraisal, is required to take these steps: (1) object in writing before the meeting; (2) not vote his stock in favor of the merger; and (3) to make written demand for payment. Zeeb v. Atlas Powder Co., 32 Del.Ch. 486, 87 A.2d 123. So far as it was possible to do so Bache & Co., on behalf of Colonial, complied with the statute. Defendant admits that Bache & Co. could split its vote for the purpose of voting on the merger. But it contends that it cannot split its demand for appraisal.
Defendant's argument is this:
Only a registered stockholder is entitled to recognition under the appraisal statute (Salt Dome Oil Corp. v. Schenck, 28 Del. Ch. 433, 41 A.2d 583, 158 A.L.R. 975), and only then if his shares have not been voted in favor of the merger. Since Bache & Co. is a single entity, its decision to vote any of its shares in favor of the merger renders it ineligible to demand appraisal.
Now, if defendant is right, all of the customers of a broker who wish to exercise the right of appraisal are without remedy if one other customer holding a single share insists that the broker vote it in favor of the merger. Naturally, a contention leading to such a conclusion is not an appealing one. But defendant says it is compelled by our decisions. Let us examine them.
In the Salt Dome case, an unregistered stockholder sought appraisal of his shares. The Supreme Court denied the remedy. It was held that with respect to intracorporate matters affecting the internal economy of the corporation, there must be order and certainty, and the corporation was entitled to look to the corporate books as sole evidence of membership. Chief Justice Layton also said:
"On the other hand, the non-registered holder of a stock certificate is deprived of no essential right. He has it in his power to record the transfer of his shares and thereby become a member of the corporation in the full legal sense. If, for any reason, he chooses to allow his shares to be registered on the corporate books in the name of another, it is not a denial of his right of actual ownership to require him to establish his rights and pursue his remedy through the nominee of his own selection. Any disadvantage is the result of his own non-action." (Emphasis supplied)
There is thus nothing in the Salt Dome case denying a beneficial stockholder the right to pursue the remedy of appraisal through his nominee. That is exactly what Colonial has done here. It would be strange, indeed, if that were not possible.
We have above referred to the unjust consequence of defendant's contention  the refusal of appraisal rights to beneficial stockholders if the broker votes any shares in favor of the merger. Defendant replies that it is the stockholder's own fault for leaving his stock in street name. He cites American Hardware Corp. v. Savage Arms Corp., 37 Del.Ch. 59, 136 A.2d 690. In that case a ten days' notice of a stockholders' meeting was claimed to be unreasonably short because there was a contest and because one-third of the outstanding shares were held in brokers' accounts. Pointing out that only the registered stockholders could vote, we said:
"If an owner of stock chooses to register his shares in the name of a nominee, he takes the risks attendant upon such an arrangement, including the risk that he may not receive notice of corporate proceedings, or be able to obtain a proxy from his nominee."
*755 So he does. But what has that to do with this case?
Defendant argues that when Colonial chose to leave its stock in street name it ran the risk of losing the right of appraisal, because the broker might vote someone else's shares in favor of the merger. Of course, no such situation was even hinted at in the American Hardware case, nor is such a case fairly within the intent of the quoted language. The risks the stockholder takes are such risks as are attributable to the necessity of protecting the corporation's right to rely on the registration of ownership, as pointed out in the Salt Dome case. But if that right is protected, there is no reason why the broker as registered owner cannot assert the right of appraisal on behalf of any customer who instructs him to do so. Defendant is not harmed in any way by requiring it to recognize such a right. Failure to do so would work manifest injustice.
Defendant concedes that a trustee holding shares for the benefit of two beneficiaries under a trust could vote one beneficiary's shares in favor of the merger and demand appraisal of the remaining shares. This, says defendant, is because there are two entities voting, a trustee for A and a trustee for B. For the matter of that, so are there really two entities in cases such as the one before us: Bache & Co., agent for Colonial, and Bache & Co. agent for other customers  or, perhaps, Bache & Co. in its own right. True, Bache & Co. is not registered as an agent on the corporate books. But this inflicts no disadvantage on the corporation. If it questions whether Bache & Co. is acting as an agent in demanding payment for shares, it may inquire into the facts. And the burden is on it to do so. Zeeb v. Atlas Powder Co., supra involved the authority of an attorney at law to object in writing to a merger as attorney for the stockholders. We held it not unreasonable "to require the corporation to inquire of the stockholder concerning the existence of the agency" if in doubt of the fact. The Zeeb holding furnishes an analogy here. If the corporation receives two opposing proxies from a broker, and a demand for appraisal in respect of the shares represented by only one, and if (as is probably unlikely) the broker fails to inform the corporation that he is acting for a customer, the corporation can readily ascertain the fact.
Defendant cites Vanadium Corporation of America v. Susquehanna Corporation, D.C., 203 F.S. 686, in which Judge Leahy quoted from and relied upon the American Hardware case. The Vanadium case is so far afield on the facts that it is of no help here. It concerns the requested modification of an injunctive order in an anti-trust suit in order to permit one of the real defendants, also a broker, to vote in respect of shares of stock held by innocent customers not involved in the alleged wrongdoing. It is evident that the controlling consideration that guided the court was the necessity not to weaken "the protective sanctions" of the injunction.
Defendant builds two arguments on the history of the statutory right of appraisal after merger. (See Chicago Corporation v. Munds, 20 Del.Ch. 142, 172 A. 452; Cole v. National Cash Credit Association, 18 Del.Ch. 47, 156 A. 183, and Southern Production Co. v. Sabath, 32 Del.Ch. 497, 87 A.2d 128.)
At common-law a single stockholder could prevent a merger. This power derived from the result that he would otherwise be forced to continue in a new or changed enterprise against his will. When the law was changed to permit a specified majority to override his objection, the right of appraisal was given to the dissenter in compensation for the loss of the common-law right. But, says defendant, this right of appraisal was in effect an option "completely to retire from the enterprise" and receive the value of his stock in money. To accord the right of appraisal to a stockholder *756 of the absorbing corporation, which is not after the merger a "changed enterprise", results in an abuse of the right. True, defendant admits, the wording of the statute permits it; but this is a highly technical right and it should not be enlarged beyond the technical wording of the statute, which strictly limits those eligible to demand appraisal to stockholders who did not vote in favor of the merger. Thus, one technical argument, says defendant, is answered by another.
How a court could base an effective rule upon the distinction suggested is not clear. How could the construction of § 262 depend upon such a distinction?
In any event, we think that there is nothing of substance in the point.
On the brief, defendant makes the further argument that the legislative policy evidenced by the history of the statute is inconsistent with the claimed right of a stockholder partially to withdraw from the enterprise, that is, to vote some shares in favor of the merger and to demand appraisal of the rest. Defendant admits (as we understand it) that a broker could refrain from voting on the merger and then demand appraisal in respect only of the shares of a customer who demands appraisal. At any rate we think he could do so. Since this case involves only shares held by a broker as nominee, it is unnecessary for us to deal with the broader question, that is, the right of an individual stockholder to an appraisal of part of his holdings.
Defendant advances yet another contention. It says that shares of stock in street name are fungible goods. The shares which Bache & Co. voted against the merger, and in respect of which it demanded appraisal, are not identifiable; i. e., cannot be distinguished from the shares voted for the merger. It is impossible, therefore, (says defendant), to say that we can identify any stock that was not voted in favor of the merger.
This argument seems inconsistent with defendant's admission that Bache & Co. could properly split its vote. In any event, what difference does it make that at the time of voting the shares were not represented by identified certificates? After the appraisal is made, certificates representing the shares will be surrendered. Defendant is really repeating in another form its contention that a vote by a broker of one share in favor of the merger disqualifies all the other shares from appraisal. For the reasons heretofore given, we disagree.
This is a case of first impression in this State, and we have thus far dealt with it largely with a priori reasoning, which in our opinion justifies the conclusion above indicated, that is, that Bache & Co. is entitled to the relief sought.
Even so, a comment must be made upon a recent decision in our sister state of New Jersey. In Bache & Co. v. General Instrument Corporation, 74 N.J.Super. 92, 180 A.2d 535, Certification denied, 38 N.J. 181, 183 A.2d 87, the Superior Court of New Jersey construed language in the New Jersey merger statute similar to ours. The court held that a brokerage firm which held blocks of stock in street names for various beneficial owners was not precluded, by having voted some shares in favor of the merger, from demanding appraisal in respect of other shares. As the Vice Chancellor said below, all of the reasoning of the New Jersey court is not applicable to our statutory scheme. But with the underlying thought in the opinion we are in agreement. This is the recognition of the realities of modern stock practices and the necessity to afford such protection to stock beneficially owned as is not inconsistent with protection of the corporation's rights.
We are in accord with the Vice Chancellor's holding, although as above indicated, we confine our decision to the facts of this case  the case of a beneficial owner and a nominee.
The judgment below is affirmed.