BACHE & CO., A LIMITED PARTNERSHIP, PLAINTIFF-RESPONDENT, v. GENERAL INSTRUMENT CORPORATION, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.

Argued December 16, 1963—Decided March 2, 1964.

45

Mr. *Arthur C. Dwyer* argued the cause for the appellant (*Messrs. Stryker, Tams & Dill,* attorneys; *Mr. Henry A. Mulcahy* of the New York Bar, of counsel; *Mr. John J. Carlin, Jr.,* on the brief).

Mr. *Alexander Feinberg* argued the cause for the respondent (*Messrs. Evoy & Feinberg,* attorneys).

The opinion of the court was delivered by

JACOBS, J. The defendant appealed to the Appellate Division from a judgment for the plaintiff entered by Judge Wick in the amount fixed by appraisers appointed by him pursuant to *N. J. S. A.* 14:12–7. We certified on our own motion.

In March 1961 the defendant General Instrument Corporation announced plans for a merger with Pyramid Electric Company. Thereafter it called a stockholders' meeting for May 10, 1961 to vote on the proposed merger and it fixed April 7, 1961 as the record date for the determination of stockholders entitled to vote at the meeting. See *N. J. S. A.* 14:5–3. The plaintiff Bache & Co., a

reputable stock brokerage firm, held a substantial amount of General Instrument stock in its street name for the benefit of various customers including Colonial Realty Corporation. As of April 7, 1961 Bache was the registered owner of 33,400 shares including 2,690 shares held for Colonial Realty. Although many of its customers advised Bache to voice their approval of the proposed merger, Colonial advised Bache that it wished to dissent. On May 2, 1961 Bache wrote to General Instrument stating that it was the record holder of a number of shares including 2,690 shares which it had "for one customer who has asked us to dissent to the proposed merger." The letter formally advised that Bache was objecting to the proposed merger and would vote 2,690 shares against it at the scheduled meeting. When the meeting was held Bache voted 2,804 shares against the merger and 18,901 for it. A sufficient number of favorable votes were cast and on May 16, 1961 the merger agreement was filed in the office of the Secretary of State. See *R. S.* 14:12–3.

On June 15, 1961 Bache filed its complaint under *N. J. S. A.* 14:12–7 seeking (1) the appointment of three disinterested appraisers to fix the full market value of the 2,690 shares without regard to any depreciation or appreciation in consequence of the merger and (2) an order for payment of the amount fixed by the appraisers. An affidavit attached to the complaint set forth that Bache was the owner of 2,690 shares, that it had notified General Instrument of its dissent, and that it had not voted in favor of the merger. After filing its answer, General Instrument moved to dismiss the complaint because Bache was not the beneficial owner of the stock and had voted some of the stock held in its name in favor of the merger. An affidavit attached to the defendant's notice of motion pointed out that, as aforestated, Bache was the registered owner of 33,400 shares on April 7, 1961 and that at the stockholders' meeting, 18,901 of its shares were voted for the merger and 2,804 were voted against it; the affidavit also stated that up to that time

Bache had not indicated the person on whose behalf the negative votes were cast. An affidavit dated July 21, 1961 by Mr. Dorata, a member of Bache's legal staff, asserted that counsel for General Instrument had been advised orally on June 2, 1961 that the dissent with respect to the 2,690 shares had been made on behalf of Colonial Realty; this was disputed in a counter affidavit filed after the motion to dismiss had been denied and an order dated August 4, 1961 had been entered, determining that Bache was entitled to a judgment appointing appraisers and directing General Instrument to pay the sum ultimately fixed by the appraisers.

Pursuant to leave, General Instrument appealed to the Appellate Division from the order entered on August 4, 1961. In support of its appeal it reasserted the position taken before Judge Wick on its motion to dismiss, that since Bache was not the beneficial owner of the 2,690 shares and since it had voted other stock in favor of the merger it could not maintain an action under *N. J. S. A.* 14:12–7. Its position was rejected in a comprehensive opinion by Judge Goldmann. *Bache & Co. v. General Instrument Corp.,* 74 *N. J. Super.* 92 (*App. Div.* 1962). The Appellate Division affirmed Judge Wick's order and this Court denied an application for certification. 38 *N. J.* 181 (1962). Thereafter an order dated September 11, 1962 was entered appointing three appraisers and directing that they make an award in the form of a final report as provided for in *N. J. S. A.* 14:12–7. The appraisers held hearings during which testimony was taken, and before the close of 1962 they filed their report fixing the fair market value in the sum of $52.75 per share.

On February 26, 1963 a hearing was held before Judge Wick. At that time counsel for General Instrument urged that the appraisers' report be rejected on the ground that it did not appear that in fixing the market value they had disregarded any depreciation or appreciation in consequence of the merger as required by *N. J. S. A.* 14:12–7. He further urged that there had been no proof "as to the agency

between Bache & Co. and its alleged customer" and no "identification of the shares involved in the dissent." In support of his contentions, counsel referred to the Dorata affidavit of July 21, 1961 which had listed certificate numbers for 2,690 shares being held for the account of Colonial Realty; apparently that list included 200 shares dated after April 7, 1961 and 500 shares which had been transferred in June 1961 to other brokers. Judge Wick suggested that General Instrument might well be taken to have conceded ownership of the 2,690 shares during the earlier proceeding before him and the Appellate Division, but that "in order to allay any possible feeling that full justice has not been done" he would give the defendant an opportunity "to see that the plaintiff produces these shares of stock." He then fixed an adjourned date for hearing during which the plaintiff could prove that it is "now the owner of 2,690 shares of stock which it says is for the benefit of Colonial Realty." On the adjourned date counsel for the plaintiff appeared with his witness Mr. Gunn but the then counsel for defendant did not appear.

Mr. Gunn testified that he was assistant credit manager for Bache and had been in its employ for 18 years, that he had handled Bache's Colonial Realty account for about ten years and that as of April 7, 1961 Bache held 2,690 shares of General Instrument for the account of Colonial Realty. He further testified that when Colonial Realty advised Bache to dissent, Bache's legal department verified the Colonial account as consisting of 2,590 shares in a margin account and 100 shares in a cash account and then instructed its cashier's department to place 2,690 shares in safekeeping and earmarked for Colonial Realty. He then produced certificates for 2,690 shares which were examined by Judge Wick who ordered them marked. When Mr. Gunn's attention was called to the fact that 200 of the shares were dated after April 7, 1961, he testified that originally all of the certificates held for Colonial Realty were dated prior to April 7, 1961 but that due to a clerical error 200 shares

were taken, perhaps for delivery to another broker, and were replaced by 200 shares dated April 13, 1961. He was not asked about the 500 shares transferred to other brokers in June 1961 but evidently these had been replaced by 500 shares taken from Bache's other holdings of General Instrument stock.

After hearing Mr. Gunn's testimony, Judge Wick entered judgment for the plaintiff in a sum representing the $52.75 per share fixed by the appraisers. Under the first point in its brief attacking the judgment, the defendant cites cases elsewhere which held that only those stockholders who owned their stock before the announcement of the merger were eligible for the relief afforded dissenters by the statutory proceeding for appraisal and payment. See *Dynamics Corp. v. Abraham & Co.,* 4 *Misc.* 2d 50, 152 *N. Y. S.* 2d 807 (*Sup. Ct.*), modified 1 *A. D.* 2d 1005, 153 *N. Y. S.* 2d 533 (1956); cf. *Central-Penn National Bank of Philadelphia v. Portner,* 201 *F.* 2d 607 (3 *Cir.* 1953); *Booma v. Bigelow-Sanford Carpet Co.,* 330 *Mass.* 79, 111 *N. E.* 2d 742 (*Sup. Jud. Ct.* 1953). It contends that the record does not establish that Colonial's stock was held by Bache on March 13, 1961 as well as on April 7, 1961 and that consequently Bache's action should fail. This contention was never made before Judge Wick or during the prior appeal and it may not justly be asserted now. In any event, such inferences as may fairly be drawn from the appendix submitted by the defendant on its present appeal would indicate that Bache held at least 2,690 shares of stock for Colonial Realty not only on April 7, 1961 but long prior thereto. Reference may be made to Mr. Gunn's testimony and also to the testimony of Mr. Selig, an official of Colonial, who appeared before the appraisers during the valuation hearings. In response to a question addressed to him by counsel for the defendant as to how many shares Colonial held "prior to May 10, 1961, during 1961 up to January 1st," Mr. Selig replied, "somewhere in excess of 2,690 shares." Elsewhere in his testimony he had described Colonial as "an

old time stockholder in General Instrument" and had expressed the belief that Colonial had not sold or bought any General Instrument stock after April 7, 1961 on which date he said Bache held 2,690 shares for it.

■■■ *N. J. S. A.* 14:12–7 is designed to afford a simple and expeditious remedy to the dissenting stockholder and to that end it is to be liberally construed. *In re Janssen Dairy Corp.*, 2 *N. J. Super.* 580, 586 (*Law Div.* 1949); *N. J. & Hudson River Ry. Co. v. Am. Elec. Wks.*, 82 *N. J. L.* 391, 398 (*E. & A.* 1911). The corporation is, of course, entitled to know the number of dissenting shares in advance of the meeting so that it may guide its actions accordingly. See *Zeeb v. Atlas Powder Co.*, 32 *Del. Ch.* 486, 87 *A.* 2d 123, 125 (*Sup. Ct.* 1952). Here it had such notice in ample measure. On May 2 Bache told the defendant that it held 2,690 shares for a customer who had asked it to dissent and it formally advised that at the May 10 meeting it would object and vote the 2,690 shares against the merger. If the defendant had been interested in the identity of the customer or the length of time he had held his stock, it could readily have made inquiry of Bache. The placing upon it of such burden of inquiry is in no sense unreasonable. See *Colonial Realty Corp. v. Reynolds Metals Co.*, 185 *A.* 2d 754, 758 (*Del. Ch.* 1962), aff'd 190 *A.* 2d 752, 755 (*Del. Sup. Ct.* 1963); *Zeeb v. Atlas Powder Co., supra,* 87 *A.* 2d, at *p.* 127. The defendant made no inquiry either immediately before or after the May 10 meeting and, indeed, when Bache filed its action for appraisal of the 2,690 shares the defendant still made no inquiry. Its answer did state that it had no sufficient knowledge or information as to Bache's allegation that it owned 2,690 shares, but the affidavit offered by it in support of its motion to dismiss set forth that Bache was the registered owner of 33,400 shares and that 2,804 of such shares had been cast against the merger at the May 10 meeting. It seems clear that furtherance of the legislative design in providing the simplified remedy outlined in *N. J. S. A.* 14:12–7 fairly calls upon

the defendant to raise any questions it has relating to the nature, length or extent of the plaintiff's ownership at the earliest available stage of the proceeding. *Cf. Southern Power Co. v. Cella,* 7 *N. J. Misc.* 10, 143 *A.* 755 *(Sup. Ct.* 1928),* aff'd 105 *N. J. L.* 573 *(E. & A.* 1929); *Ahlenius v. Bunn & Humphreys, Inc.,* 358 *Ill.* 155, 192 *N. E.* 824, 828 *(Sup. Ct.* 1934). See also *State ex rel. Adams v. New Jersey Zinc Co.,* 40 *N. J.* 560, 572 (1963).

When Judge Wick was called upon to consider the plaintiff's application for appointment of appraisers, the defendant advanced no objections other than those soundly rejected by the Appellate Division in *Bache & Co. v. General Instrument Corp., supra,* 74 *N. J. Super.* 92. And when, on September 11, 1962, he entered his order appointing appraisers, the defendant did not, as it might have, request the Judge to direct the plaintiff to submit its certificates of stock to the Clerk of the Court for proper notation. *N. J. S. A.* 14:12–7. Nor did it at that time raise any of its current ownership objections or tender any supporting evidence. Instead it raised its objections before the appraisers who were admittedly in no position to deal with them since their only function was to fix the value of the 2,690 shares. *N. J. S. A.* 14:12–7. When after the appraisers submitted their report and the defendant's objections were first presented to Judge Wick, he fixed an adjourned date at which the plaintiff could furnish proof that it held 2,690 shares for the benefit of Colonial Realty. At the adjourned date the assistant credit manager of Bache gave his testimony as to Colonial's account with Bache and tendered 2,690 shares held by Bache for Colonial. At that time the defendant could have fully examined him with respect to the records of Bache but, without any explanation, it failed to have any representative present. Certainly it is now in no position to assert, as it nonetheless seeks to under the second point of its brief, that "Bache failed to produce its own records and failed to prove by competent evidence from other sources either what amount of stock

Colonial owned on April 7, 1961 or that Colonial did not acquire its stock after public announcement of the merger."

■■ Under the third and fourth points in its brief the defendant attacks Bache's right to payment with respect to the 500 shares taken from its general holdings and the 200 shares dated after April 7, 1961. It relies upon *Graves v. Pittsburgh Consolidation Coal Co.*, 355 *Pa.* 224, 49 *A.* 2d 344 (*Sup. Ct.* 1946), where an individual stockholder had voted his 200 shares against the merger and, after approval of the merger, had traded in the stock, first purchasing 100 additional shares and then selling 100 of his original shares. The court held that his right to payment was confined to the 100 original shares still in his possession. We need not concern ourselves with the soundness of that holding for, in any event, it has no application here. There is no evidence that Colonial did any trading in the defendant's stock after the approval of the merger and there is ample evidence that 2,690 shares were long held by Bache for Colonial's account, both before and after the merger. The shares had not been earmarked, but that was in the regular course of Bache's stock brokerage business which is not questioned here. When Colonial instructed it to dissent, Bache took steps to earmark the shares but there were evidently intramanagement inadvertences giving rise to the issues now being raised. These inadvertences did not at all prejudice the defendant. It was told well in advance that the shares would be voted against the merger, the shares were actually so voted, and ultimately certificates representing the shares were presented. As the court well indicated in *Reynolds Metals Co. v. Colonial Realty Corp., supra,* 190 *A.* 2d, at *p.* 756, it makes no difference that "at the time of voting the shares were not represented by identified certificates" since, after the appraisal, "certificates representing the shares will be surrendered" by the stock brokerage firm. That is exactly what is being done here, no harm has been done by any of the formal or technical deficiencies suggested by the defendant, and none of them should be elevated to deprive the *bona fide* dissenter

of its just right to payment of the appraised market value as contemplated by the statute.

Under its fifth and final point the defendant contends that the appraisers did not comply with the standard set forth in *N. J. S. A.* 14:12–7. The statute directs that the appraisal be at full market value without regard to any depreciation or appreciation in consequence of the merger. Here stock market quotations were readily available and they were properly relied upon by the appraisers. That much of their conduct is not questioned by the defendant, nor does it dispute that the statutory reference to full market value relates to the date of the merger. See *In re Janssen Dairy Corp., supra,* 2 *N. J. Super.* 580; *cf. In re Morris Canal & Banking Co.,* 104 *N. J. L.* 526 (*E. & A.* 1928); *Prall v. United States Leather Co.,* 6 *N. J. Misc.* 967, 143 *A.* 382 (*Sup. Ct.* 1928), aff'd 105 *N. J. L.* 646 (*E. & A.* 1929); *Koenig,* "Dissenting Stockholders Appraisal Rights in New Jersey," 84 *N. J. L. J.* 497, 503 (1961). What the defendant does urge is that the appraisers simply took the average market value on the date of the merger, improperly ignoring the statutory direction that any depreciation or appreciation in consequence of the merger be eliminated.

The order appointing the appraisers explicitly set forth that the plaintiff was entitled to an appraisal of the full market value without regard to any depreciation or appreciation in consequence of the merger and, at the opening of the hearings, counsel for the plaintiff quoted the statute and emphasized the statutory responsibility of the appraisers. At no point during the hearings did the defendant introduce any testimony to establish causal relationship between the merger and the higher market price of the stock. It is true that the stock rose after the announcement of the merger but this may well have been due to other factors. In 1961 there had been a significantly rising market in the stock prior to the March announcement and that rise was comparable to the rise which occurred between the announce-

ment and the actual merger. That the same forces which caused the earlier rise may also have caused the later one was a permissible inference and the defendant introduced no evidence and took no steps to negate it. Clearly, the record before us would not justify a finding, as the defendant now in effect seeks, that the appraisers violated their duty by failing to eliminate appreciation shown to have resulted from the merger.

The appraisers submitted no detailed findings but the defendant never made any request for such findings and the court's order simply called for an award in the form of a final report as provided for in *N. J. S. A.* 14:12-7. The award as rendered was sufficient to satisfy the terms of the statute and was entitled to the presumption of correctness. *Cf. Warren v. Baltimore Transit Co.*, 220 *Md.* 478, 154 *A. 2d* 796, 800 (*Ct. App.* 1959). Nothing presented before Judge Wick in anywise impaired the presumption and, under the statute, the award became final and conclusive on confirmation. Though no separate order of confirmation was entered, the judgment for the plaintiff in the amount of the award had that purpose and effect. We find no just basis for disturbing the judgment and it is therefore:

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.