417 So.2d 994 (1982)
John GRECO, Cynthia Marie Greco, Mary Josephine Castro, Linda Jo Greco, Jo Ann Greco and Exchange Bank of Tampa, As Trustee, in the Name of Tampa Wholesale Company, Appellants,
v.
TAMPA WHOLESALE COMPANY, Appellee.
No. 80-1288.
District Court of Appeal of Florida, Second District.
March 31, 1982.
As Amended on Denial of Rehearing August 18, 1982.
*995 Paul B. Johnson of Gregory, Cours, Paniello, Johnson, Hayes & Hoft, Tampa, for appellants.
David A. Maney of Gordon & Maney, Tampa, Charles P. Schropp of Shackleford, Farrior, Stallings & Evans, Tampa, and William T. Keen, Tampa, for appellee.
Bruce A. Walkley and David H. McClain of McClain, Walkley & Stuart, P.A., Tampa, as amicus curiae.
HOBSON, Acting Chief Judge.
Appellants John Greco, his four daughters, and Exchange Bank of Tampa, as Trustee, appeal three orders: a final summary judgment rendered in favor of Tampa Wholesale Company, and two orders denying appellants' motions for order compelling discovery. We reverse the final summary judgment and affirm the orders denying motions for order compelling discovery.
Tampa Wholesale is a closed family corporation formed in 1948. Its outstanding stock consisted of 4,000 shares owned equally by the families of four individuals: Joe Greco, Americo (Mac) Greco, Frank Guinta, and John Greco. After the death of Joe Greco in January, 1977, the remaining shareholders discussed the possibility of locating a buyer for Tampa Wholesale Company. As that possibility neared reality, John Greco voiced his disapproval of a sale and subsequently filed a complaint asking the trial court to restrain the sale of the assets of Tampa Wholesale. In April, 1978, an order on request for temporary relief was entered, restraining the sale of the assets of Tampa Wholesale and, pursuant to stipulation, a temporary injunction was entered by the trial court. In January, 1979, these orders were dissolved.
In November, 1978, an exchange agreement between Tampa Wholesale and Lucky Stores, Inc. was executed by all shareholders of the corporation except appellants in this action. Under the terms of the exchange agreement, Lucky Stores agreed to acquire substantially all the assets of Tampa Wholesale for the sum of $9,000,000, plus 225,641 shares of Lucky Stores voting preference stock.
In December, 1978, Tampa Wholesale sent appellants a document entitled "Notice to Nonconsenting Shareholders Pursuant to Florida Statutes, Section 607.394," advising that on December 22, 1978, Tampa Wholesale had consented in writing to the sale of its assets and that the sale had been consented to by holders of outstanding stock *996 having not less than a minimum number of votes necessary to authorize the sale as required by section 607.241, Florida Statutes (1979). A copy of the statute was furnished to each appellant. Appellants were informed of their rights under a paragraph captioned "Rights of Dissenting Shareholders." They were advised that if they wished to dissent they should make a written demand on Tampa Wholesale within fifteen days of the mailing. Appellants filed timely dissents and written demands for payment of the fair value of their shares in Tampa Wholesale Company. They advised the company that they were dissenting as to all but one share owned by each appellant; thus, they retained a total of six shares of stock.
Tampa Wholesale notified each appellant that, pursuant to section 607.247(10), they had 20 days from the date of demand in which to submit their stock certificates to Tampa Wholesale for notation of their demands.[1] Appellants had through and including February 8, 1979, within which to tender their stock certificates for notation.
On February 14, 1979, Wilbur Hall, President of Tampa Wholesale, mailed letters to appellants advising them that, inasmuch as they had failed to comply with section 607.247(10), Tampa Wholesale Company was exercising its option to terminate their rights as dissenting shareholders. On February 23, an associate of the law firm representing appellants appeared at the corporate offices of Tampa Wholesale in order to submit the certificates for notation. Mr. Hall was not present in the corporate offices at that time. The associate delivered certain correspondence dated February 23 from appellants' counsel and Exchange Bank, as Trustee. The letters reiterated appellants' objection to the proposed corporate action, denied any waiver of their rights as dissenting shareholders, and demanded payment of the fair value of the shares pursuant to chapter 607, Florida Statutes.
Appellants' attorney returned on February 26 with the certificates. At that time Mr. Hall advised him that after a conference with his attorneys he would not insert the notations on the certificates.
On March 1, 1979, the sale of the assets of Tampa Wholesale was effected and on March 2 appellants advised Tampa Wholesale that it was obligated to make a written offer to them to pay for their shares at the fair value of the stock. Tampa Wholesale responded by asserting that the statutory procedure was not appropriate and that Tampa Wholesale was refusing to abide by section 607.247(5).
On April 20, 1979, appellants filed a complaint for determination of the fair value of shares of stock and Tampa Wholesale answered, asserting that appellants had failed to comply with section 607.247(10) and were barred from maintaining the action. Tampa Wholesale filed a motion for summary judgment, which was granted and subsequently became the subject of this appeal.
The parties have not directed us to, nor have we been able to locate, a Florida case dealing with the precise issue of this appeal. We can, however, turn to decisions from those states which have similar statutes controlling corporations. Although these decisions vary as to the degree of procedural compliance required of dissenting shareholders,[2] we have determined that the *997 courts of New York are most closely aligned with our viewpoint in this matter.
Two New York cases were cited to us by the parties to the instant appeal. Both cases deal with New York Business Corporation Law, section 623 (formerly section 21), which is essentially identical to section 607.247(10), Florida Statutes.
In re Weidersum, 41 Misc.2d 936, 246 N.Y.S.2d 638 (1964), deals with dissenting stockholders who timely filed their written demand for payment, but did not submit their certificates for notation until six months and sixteen days after the deadline. The trial court noted that there had not been "even token compliance" with the statutory timetable. Further, the stockholders offered no excuses, but, rather, argued that their substantive right to payment was vested upon notification to the corporation of their dissent and demand for payment.[3] The trial judge stated:
Although the courts have excused, under certain circumstances, minor departures from the literal requisites of section 21 ..., to grant such relief to the present petitioners would so drastically tilt the sensitive equilibrium of interests ... as to constitute complete rejection of the mandate.
In the case of Saseen v. Danco Industries, Inc., 20 A.D.2d 657, 246 N.Y.S.2d 440 (1964), the appellate court reversed the dismissal of the dissenting stockholder's action for determination of value of shares. The facts are almost identical to those of the instant case. Saseen and other dissenting shareholders of the closely held corporation made their timely objection to the sale and demanded payment of the value of their shares. They were then obliged to submit their shares for notation by February 25, 1963. They failed to submit their shares before the deadline, but instead filed an action for determination of the value of their shares on March 21, 1963. The shareholders were in communication with the corporation at all times prior to filing the action. The appellate court stated:
Throughout this interval of time the corporation had no reason to believe that petitioners would relinquish their right to appraisal and to demand payment. Denial of relief to petitioners would result in substantial prejudice to them. They would be deprived of their right to payment and would be relegated to their status as minority stockholders. It is undisputed that respondent is a close corporation and there is no market in its shares. On the other hand, the corporation has not been prejudiced whatsoever.
In the case sub judice, appellants' objection to the sale of the corporate assets was vociferous and continuous. The record shows conclusively that the other stockholders and the corporate officers were acutely aware at all times of appellants' position.
The purpose of the notation requirement in section 607.247(10) is to protect the corporation in a situation where the dissenting shareholder transfers his certificates to a third party, thereby exposing the corporation to a third-party claim inconsistent with the dissenter's demand for payment. There was no possibility that appellants in the instant case could have disposed of their shares to third parties, since the corporation was a closely held one and the certificates contained an endorsement which restricted their transfer to third parties and required *998 that the shares be first offered to the corporation for purchase. Thus, the fifteen-day delay in submitting the shares for notation was not prejudicial to the corporation.
Appellee stated in its brief that appellants made no effort to have a court set aside their failure to submit the shares for annotation and reinstate their dissenters' rights during the entire seventeen-month period from February 14, 1979, until July 2, 1980, the date of the final summary judgment. This inaction, appellee argues, allowed appellants to take a position of being able to "wait and see" how the sale turned out. In view of the fact that appellants objected repeatedly before, during, and after the sale, we fail to see the logic of this argument. Moreover, the violation of the time limitation was not seventeen months. The procedural position of the dissenting shareholders in the Saseen case was identical to that of appellants in this cause. The filing of a complaint for determination of the fair value of stock serves to allow a court of competent jurisdiction to consider whether the dissenters have shown good and sufficient cause for their failure to comply with the time limits. Even if we disregard appellants' submission of their certificates for notation on February 23, the complaint for determination of value was filed on April 20, 1979. Thus, appellee is mistaken on two points, 1) that appellants had no option but to obtain an order setting aside their failure to comply with section 607.247(10) before they could file a complaint for determination of value of shares, and 2) that the failure to comply was of a seventeen-month duration.
In this case there is no factual conflict and the evidence was not in dispute. Under these circumstances it was held in Holland v. Gross, 89 So.2d 255, 258 (Fla. 1956):
A finding which rests on conclusions drawn from undisputed evidence, rather than on conflicts in the testimony, does not carry with it the same conclusiveness as a finding resting on probative disputed facts, but is rather in the nature of a legal conclusion.
See also In Re Estate of Donner, 364 So.2d 742 (Fla. 3d DCA 1978).
It was held in B & B Super Markets, Inc. v. Metz, 260 So.2d 529, 531 (Fla. 2d DCA 1971), cert. den. 267 So.2d 834 (Fla. 1972):
Generally, appellate Courts will not disturb findings of the trier of facts, but if such findings are contrary to the manifest weight of the evidence, or are contrary to the legal effect of the evidence, the reviewing Court has not only the authority and power, but it is its duty, to reverse. (Emphasis added)
Dixson v. Kattel, 311 So.2d 827 (Fla. 3d DCA 1975); Hamilton v. Title Insurance Agency of Tampa, Inc., 338 So.2d 569 (Fla. 2d DCA 1976); Hill v. Parks, 373 So.2d 376 (Fla. 2d DCA 1979).
In this case, the findings are contrary to the legal effect of the evidence. The evidence conclusively shows that the purpose of section 607.247(10) was fully realized.
We find that appellants showed good and sufficient cause why their rights as dissenting shareholders should not be terminated. The underlying purpose of section 607.247(10) was not thwarted by the untimely submission. Further, we believe that the procedure by which a dissenting shareholder enforces his rights should be liberally construed in circumstances where no prejudice is shown to the corporation. We reverse the final summary judgment rendered in favor of Tampa Wholesale Company and remand this case for further proceedings not inconsistent with this opinion.
REVERSED and REMANDED.
RYDER, J., concurs.
OTT, J., dissents with opinion.
OTT, Judge, dissenting.
I dissent. Section 607.247(10), Florida Statutes, specifically gave appellee the option to consider appellants' failure to comply with the statute as a complete termination of their rights as dissenting shareholders. That option was subject to only the power (not duty) of the court below to "direct otherwise" for good and sufficient cause shown.
*999 On the facts presented to the court below, it acted well within its discretion in refusing to inject its opinion into the controversy between the parties. The salient feature of the evidence is that when appellants notified appellee on January 18, 1979, that they were dissenting from the proposed sale as to all except six of their shares, they then had twenty days, under the statute, to present their dissenting shares to appellee for notation of their dissident status. Appellants undeniably breached that obligation when February 8 came and went without any such presentation.
On February 14 appellee gave appellants written notice that their failure to comply with the statute had triggered the consequences specified in the statute, namely the termination of their rights as dissenting shareholders. Appellants still did nothing whatsoever to so much as suggest even mild concern or interest. Not until February 23 did they finally bestir themselves and attempt to present their share certificates to appellee for notation. At no time have appellants ever disputed those facts. Their only defense of that breach is the questionable hypothesis that it really wasn't necessary for them to comply with the statute because their certificates already bore a notation that transfer thereof was restricted under a common closed corporation stockholders' agreement. There is nothing in the statute justifying noncompliance under such circumstances, even if true, and I can find no other authorization for it. At best, appellants were simply presuming upon appellee's good nature and forebearance. Under the circumstances, when everyone knew that appellants were relying solely on their technical statutory rights, that was a foolish thing to do. It does not surprise me that the trial court chose to leave appellants where their highhandedness got them.
However, whether I agree with the trial court is irrelevant. Appellants' defense of their admitted violation of the statute was a matter addressed to the discretion of the trial court. As I understand the term "discretion," it means that there is no duty to decide an issue either way. To say that a court "abuses its discretion" whenever it fails to reach a conclusion permitted by the evidence is to completely ignore the traditional definition of discretion.
The instant case is a good example of what I am talking about. The issue before the trial court was not whether appellants had defaulted, nor whether the corporation had the right to treat that default as a termination of appellants' status as dissenting shareholders. The terms of the statute clearly required appellants to present their certificates for notation within twenty days, and specifically gave the corporation the option which was exercised in this case. The sole duty of the trial court was to determine whether the showing made by appellants was sufficient to justify a contrary order, and then decide whether to make such an order. The statute does not say that a court must or even should "direct otherwise" if good cause is shown, nor does it so much as hint that if good cause is shown a dissenting shareholder is entitled to an order countermanding the corporate action. The court is given the power to overrule the corporation if good cause is shown, or conversely, the court has no power to overrule the corporation if good cause is not shown.
It would be quite different if the statute did not specify the consequences of default in presenting the certificates, and a court was called upon to decide whether (1) a default had in fact occurred, and (2) what to do about it. In such case, the court might well say, "Well, yes, they defaulted, but it wasn't a serious breach, so there should be no penalty or consequences suffered because of it." It seems to me that the majority opinion overlooks the fact that we are faced here with an entirely different situation. Appellants did not comply with the statute. The consequences expressly directed by the statute then followed, i.e., the corporation elected to treat the default as a termination of appellants' rights as dissenting shareholders. A court of competent jurisdiction, in the exercise of the discretion vested in it, declined to direct otherwise. Whether or not we agree with that *1000 decision, or whether we would have reached the same decision, is of no moment. The only question is whether the trial court acted within the proper exercise of its discretion. I am unable to say that it did not, and thus I would not tamper with its decision.
NOTES
[1] Section 607.247(10), Florida Statutes (1979):

Within 20 days after demanding payment for his shares, each shareholder demanding payment shall submit the certificate or certificates representing his shares to the corporation for notation thereon that such demand has been made. His failure to do so shall, at the option of the corporation, terminate his rights under this section unless a court of competent jurisdiction, for good and sufficient cause shown, shall otherwise direct. (Emphasis added)
[2] For example, New York Business Corporation Law section 623(f) (McKinney 1963) and New Jersey Statute 14A:11-4(1)(a) provide that a shareholder who fails to submit his shares for annotation within the prescribed time limit shall lose his dissenting shareholder's rights unless a court, for good cause shown, shall otherwise direct. See In re Davis, 59 Misc.2d 1098, 301 N.Y.S.2d 340 (1969), aff'd, 33 A.D.2d 1100, 308 N.Y.S.2d 107 (1970), 25-day delay did not prejudice corporation where it had no reason to believe stockholder intended to withdraw demand for payment; In re Camden Trust Co., 121 N.J.L. 222, 1 A.2d 475 (1938), provision to be liberally construed; Bache & Co. v. General Instrument Corp., 42 N.J. 44, 198 A.2d 759 (1964), statutes to be liberally construed.

On the other hand, the comparable provisions on rights of dissenting shareholders in Delaware and North Carolina statutes do not contain the above-mentioned phrase which would give the courts discretion regarding the time limitations. Del. Code Ann. tit. 8, § 262, and N.C. Gen. Stat. § 55-113. See Schneyer v. Shenandoah Oil Corp. (Del. Ch. 1974), 316 A.2d 570, no discretion to extend deadline as in New York statutes; Jackson v. Stanwood Corp., 38 N.C. App. 479, 248 S.E.2d 576 (1978), lack of strict compliance held fatal to petition for determination of value of shares.
[3] The facts do not reveal whether the stockholders communicated with the corporation in the interim or whether the corporation was a closely held one. It is likely that, in view of the six-month delay, these factors would not have saved the stockholder's case.